LAW OFFICES OF JAMES C. DEZAO, P.A.
322 Route 46 West
Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
James C. DeZao, Esq. ID 019511985
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL WIDMAIER, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF NEWARK, NEWARK POLICE DEPARTMENT, EUGENE VENABLE, Police Chief, COUNTY OF ESSEX, DETECTIVE SILAS SMITH JR., in his Official and Individual Capacity, LT. JOHN RODRIGUES, in his Individual and Office Capacity, DT. RUI DOMINGUES, In his Individual and Official Capacity, ST. JOSEPH FESTER, in his Individual and Official Capacity, ANTHONY CAMPOS, Agency Executive, in his Official and Individual Capacity, JOHN DOES 1-5, MARY DOES 1-5, DOE CORPORATION 1-5, <br><br> Defendants(s) | CIVIL ACTION NO.: <br> CIVIL ACTION |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Michael Widmaier ("the Plaintiff"), brings this claim for Civil Rights Violations and personal injuries stemming from the excessive force and wrongful arrest by the City of Newark ("City"), County of Essex ("Essex"), Newark Police Department ("Police Department") and arresting Detective Silas Smith, Jr. ("Smith"), in his individual and official capacity, and Eugene Venable ("Venable"), in his official and individual capacity as Police

1

Chief, Lt. John Rodrigues ("Rodrigues"), in his individual and official capacity; Det. Rui Domingues ("Domingues"), in his individual and official capacity; Sgt. Joseph Fester ("Fester"), in his individual and official capacity; Anthony Campos ("Campos"), in his individual and official capacity, and the Doe Defendants, whose identities are presently unknown to the Plaintiff.

## JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C. §1331, this Court has subject matter jurisdiction over this Complaint as it arises under the laws of the United States, 42 U.S.C. §1983, *et seq.*

2. The District Court has jurisdiction over the Plaintiff's civil rights claims pursuant to both 28 U.S.C. §1343 and 28 U.S.C. §1367.

3. Venue in this District is appropriate pursuant to 28 U.S.C. §1391(b) as the Defendants reside in this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

4. The Plaintiff has fully complied with all administrative prerequisites for the commencement of this action, the Defendants having disclaimed liability.

## PARTIES

5. The Plaintiff is an individual residing in Newark, New Jersey.

6. The City of Newark is a governmental entity responsible for the oversight, training, and hire of Police Department personnel, officers, and staff; and for implementation of policies and procedures at the Police Department.

7. The County is a political and geographic subdivision of the State of New Jersey organized under State law under applicable federal and state law and

responsible for overseeing the conduct of its governmental subdivisions including the City of Newark and the Police Department.

8. Smith is an individual who was at all times relevant employed at the Police Department as a Detective.

9. Rodrigues is an individual who was at all times relevant employed at the Police Department as Lieutenant.

10. Venable, upon information and belief, was at all times the Police Chief at the Police Department and responsible for the implementation of policies and procedures at the Police Department.

11. Domingues was and is employed by the Police Department as Detective.

12. Fester was and is employed by the Police Department as Sergeant.

13. Campos was and is employed by the Police Department as Agency Executive.

14. The Doe Defendants are individuals and/or entities, whose identities are presently unknown to the Plaintiff, responsible for the actions and omissions alleged herein.

## FACTUAL BACKGROUND

15. On or about July 21, 2015, the Plaintiff was present with his girlfriend, Vanessa, at the Riviera Hotel ("Riviera") in Newark.

16. At approximately 8:30 am, the Plaintiff left the Riviera in order to pick up breakfast at the Exxon Station nearby.

17. At the Exxon Station, the Plaintiff purchased two bagels and Gatorades, which he carried in a plastic shopping bag.

18. On his return to the Riviera, he observed an acquaintance by the name of Kadeem crossing Clinton Avenue near Stratford Place.

19. The Plaintiff invited Kadeem back to the Riviera, which Kadeem agreed to.

20. As the Plaintiff and Kadeem were walking back to the hotel, a Jeep Cherokee and minivan approached them, each occupied solely by one driver.

21. The driver of the Jeep rolled down his window and stated, "Drop the fucking gun!"

22. The Plaintiff looked at Kadeem and asked if he had a gun. Kadeem stated he did not know what the driver was talking about.

23. Fearing for their safety and thinking they were about to be accosted, the Plaintiff and Kadeem fled.

24. During his flight, the Plaintiff dropped the shopping bag containing his bagels and drinks.

25. The Plaintiff heard the driver of the Jeep say, "I'm gonna kill you."

26. The Plaintiff ran into an alleyway between 18 and 20 Stratford Avenue and scaled a fence. He then continued fleeing to the other end of the alleyway, where he scaled another fence, and ran into a church parking lot. He ran to the end of the church parking lot, where he climbed another fence leading to Avon Avenue.

27. The Jeep was observed driving opposite traffic on the one-way Avon Avenue toward the Plaintiff. The driver was attempting to run the Plaintiff over, but he was able to avoid the vehicle and run past the Boys and Girls Club and into an

opening in the fence of the Somerset Homes Apartments, which the Jeep could not enter.

28. The Jeep continued after the Plaintiff, driving through the Somerset Homes parking lot and onto the grass after him.

29. The Plaintiff ran along the fence line toward an opening/exit in the fence at the opposite end of Somerset Homes, at which time the Jeep headed toward him at an angle attempting to block his exit while accelerating.

30. The Plaintiff raised his hands in an attempt to brace himself from the impact of the Jeep. The Jeep struck him, knocked him to the ground on his back and dragging him while driving over his leg in the grassy area next to the opening in the fence.

31. The Jeep drove directly over the Plaintiff's leg prior to coming to a stop on top of him.

32. The driver opened the door and, without exiting, looked down, saw the Plaintiff was located under the vehicle, then reversed the vehicle and drove backward with complete indifference to causing additional bodily injury to the Plaintiff.

33. The Plaintiff grabbed the undercarriage of the vehicle and pulled his head out from underneath so that the vehicle did not run over his head.

34. The Jeep drove directly over the Plaintiff's torso with its left front tire and came to a stop several feet behind him.

35. The driver of the vehicle, later identified as Smith, exited the Jeep and began yelling, "Where's the fucking gun?!"

36. The Plaintiff pleaded with Smith that he never had a gun, and begging Smith to get him help.

37. Smith answered the Plaintiff by stating, "I'll get you some help when you tell me where the gun is."

38. The Plaintiff continued to plead with Smith that he was hurt badly and in need of help.

39. Passersby began approaching to see what was happening. While the Plaintiff pled with them to call 911, Smith told all such persons to leave or be arrested.

40. The Plaintiff soon heard his cell phone ringing nearby, likely ejected from his pocket during the incident. He asked Smith if he would grab the phone for him; Smith denied hearing it ring and asked for the Plaintiff's phone number.

41. The Plaintiff gave Smith his number, which Smith dialed. The Plaintiff heard his phone ringing again, and Smith told him that he would retrieve it if the Plaintiff told him where the gun was.

42. The Plaintiff pled with Smith to believe him, that he was carrying a bag with food in it and he would find and show it to him.

43. Smith repeated that he would get the Plaintiff help if he told him where the gun was; though the Plaintiff instructed Smith to search him, Smith never did.

44. Eventually, the minivan arrived and a white male exited the driver's side. The male approached Smith and began discussing something.

45. The Plaintiff pled with the man to help him. The man turned to him and said, "Now, do me a favor and say, Kids, don't run from the police because this is what happens" while possibly taking a video of the Plaintiff via a cell phone.

46. The Plaintiff pled with the male to get him help, asking him for help finding his phone.

47. When Smith and the male called the Plaintiff's phone, they denied hearing it and told him they would find his phone when he told them where the gun was.

48. Eventually, Vanessa came to the scene. Smith told her that, unless she wanted to go to jail, she should "get the fuck out of here." Vanessa broke down crying and left the scene.

49. The white male departed in the minivan.

50. In time, an ambulance arrived. Smith told the rescue workers that the Plaintiff was robbing drug dealers with a gun and, while running away, ran into the Jeep.

51. The Plaintiff attempted to lift his leg off the ground, but had suffered multiple fractures so severe that the lower portion of it remained on the ground.

52. Smith insisted to the medics that he would not help the Plaintiff up.

53. In the ambulance, another white male, identified as a Police Officer, stated, "Well, I guess I don't need to cuff you."

54. The Plaintiff was never searched.

55. At the hospital, the attending physician asked Smith whether the Plaintiff had been run over; Smith insisted that the Plaintiff "ran into" the vehicle while attempting to flee.

56. The attending physician noted that the Plaintiff's injuries and the tire and grass marks on his tee-shirt looked like he had been run over by a vehicle at which time Smith departed the hospital and did not return.

57. The Plaintiff was placed under police guard from the day of the incident, Tuesday, until that Sunday, when he was told he was released without being presented with charges.

58. On July 31, 2015, a female Officer came to the hospital with Smith to fingerprint the Plaintiff and told him, "Newar's gonna give you a big check for this."

59. An unidentified male officer told her to keep quiet; the female stated she was just telling the truth and that the Plaintiff could be her "sugar daddy."

60. The Plaintiff underwent four (4) surgeries during his stay at University Hospital and was unable to leave until August 2, 2015.

61. The Plaintiff was not officially notified of his charges until his notice to appear arrived from the Municipal Court.

62. The Plaintiff's legal counsel obtained copies of the arrest and incident reports approximately two (2) weeks after the incident, which indicated that he was charged with Wandering to obtain a Controlled Dangerous Substance (CDS) and Resisting Arrest, and was seen ingesting a suspected CDS orally and later admitted to purchasing a bundle or ten bags of a CDS (Heroin).

63. No accident report, stop report, use of force report, witness statements, notification of chain of command, or crime scene photographs were taken at the scene, in direct conflict with Newark Police Standard Operating Procedures and the US Department of Justice's and US Attorney General's Office recommendations subsequent to their investigation of the Newark Police Department.

64. No charges were filed for possession of CDS, weapons or destruction of evidence.

65. Subsequently, all charges against the Plaintiff were dropped prior to the Municipal Court trial without notice to his attorneys.

66. As a result of the aforesaid, the Plaintiff suffered and continues to suffer severe and permanent personal and psychological injuries.

### Causes of Action
Violation of 42 U.S.C. §1983 (Excessive Force) (Against the Defendants Individually and Professional)

67. The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-66.

68. The conduct complained of was committed by the Defendants while acting under color of state law; and was performed in bad faith.

69. This conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution of the United States, Fourth Amendment, *to wit*, the right to be free from excessive force and harm to his person.

70. Smith was individually involved in the aforesaid deprivation of the Plaintiff's rights in utilizing excessive force.

71. Upon information and belief, some or all of the other individual Defendants were so involved.

72. Therefore, the Defendants are liable for damages.

Wherefore, the Plaintiffs demand judgment against the Defendants for damages, Attorney's fees, and costs of suit.

### Count II:
Violation of 42 U.S.C. §1983 (Wrongful Arrest) (All Defendants Individually and Professionally)

73. The Plaintiff repeats and re-alleges the allegations in paragraphs 1-72.

74. The conduct complained of was committed by the Defendants while acting under color of state law.

75. This conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution of the United States, *to wit*, the right to be free from wrongful arrest.

76. Smith and other individual Defendants were individually involved in the aforesaid deprivation of the Plaintiff's rights in arresting him without authority or cause.

77. The Defendants did not, and could not have, reasonably believed that the arrest was lawful, in light of clearly established law and/or the information they possessed at the time.

78. Therefore, the Defendants are liable for damages.

<u>Count III</u>:
Monell Liability (City, County, Police Department, and All Supervisors)

79. The Plaintiff repeats the allegations contained in Paragraphs 1-78.

80. The Defendants knew that their intended plan of action violated 42 U.S.C. § 1985.

81. The defendants had the power change or forego their plan in a way that would not violate 42 U.S.C. § 1985.

82. 106.  The defendants violated 42 U.S.C. § 1986 by neglecting to prevent, refusing to prevent, or aid confrontation with full knowledge and purpose to violate 42 U.S.C. § 1985.

83. 107.  The defendants' violations of 42 U.S.C. § 1986 directly and proximately caused Mr. Vargas to suffer severe emotional distress, injury, and death.

84. 108.  The defendants' violations of 42 U.S.C. § 1986 were done in a manner that was reckless or callously indifferent to Mr. Vargas' constitutional and statutory protected constitutional rights, and the plaintiffs are thus entitled to recover punitive damages, as permitted by law.

### DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues as permitted by law.

LAW OFFICES OF JAMES C. DEZAO, P.A.

By: _____

James C. DeZao, Esq.

Dated: 5-5-16