**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West
Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
James C. DeZao, Esq. ID 019511985
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MICHAEL WINDMAIER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO.: |
| | : | 2:16-cv-2533 |
| CITY OF NEWARK, NEWARK | : | |
| POLICE DEPARTMENT, EUGENE | : | CIVIL ACTION |
| VENABLE, Police Chief, COUNTY OF | : | |
| ESSEX, DETECTIVE SILAS SMITH JR., | : | |
| in his Official and Individual | : | |
| Capacity, LT. JOHN RODRIGUES, in | : | |
| his Individual and Office Capacity, | : | |
| DT. RUI DOMINGUES, In his | : | |
| Individual and Official Capacity, | : | |
| ST. JOSEPH FESTER, in his Individual | : | |
| and Official Capacity, ANTHONY | : | |
| CAMPOS, Agency Executive, in his | : | |
| Official and Individual Capacity, | : | |
| JOHN DOES 1-5, MARY DOES 1-5, | : | |
| DOE CORPORATION 1-5, | : | |
| | : | |
| Defendants(s) | : | |
| | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION OF THE DEFENDANTS, POLICE CHIEG EUGENE VENABLE, DETECTIVE SILAS SMITH, JR., LT. JOHN RODRIGYES, DETECTIVE RUI DOMINGUES, SERGEANT JOSEPH FROST AND ANTHONY CAMPOS TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . 1

I.   The Plaintiff Stated a Claim for Excessive Force
     Where the Defendants' Conduct Most Certainly Shocks
     the Conscience. . . . . . . . . . . . . . . . . . 1

II.  The Defendants Lacked Probable Cause for the
     Plaintiff's Arrest, Thereby Sustaining the False
     Arrest Claim . . . . . . . . . . . . . . . . . . . 8

  A. The Question of Probable Cause is a Factual One
     Inappropriate for Resolution at This Juncture;
     And Is Lacking Based On the Allegations and
     Inferences Therefrom in the Complaint. . . . . . 8

  B. There Was No Probable Cause That the Plaintiff
     Committed Either Charged Crime. . . . . . . . . 11

           ii. Resisting Arrest . . . . . . . . . . . . 13

  C. To the Extent Necessary, Limited Discovery
     Should Be Permitted . . . . . . . . . . . . . . 14

III. The Defendants Are Not Entitled to Qualified
     Immunity On the Fae of the Complaint. . . . . . . 15

IV.  The Plaintiff's Claims for Respondeat
     Superior/Monnell Liability Against the City
     Should Remain Pending Discovery . . . . . . . . . 21

V.   In Light of the Lack of Probable Cause, the
     Defendans' Argument Against the Claim for
     Violation of the New Jersey Constitution,
     Article I, Section 7, Fails. . . . . . . . . . . ..23

VI.  The Defendant breached a Duty Owed the Plaintiff
     Sufficient to Establish Gross Negligence.. . . . . 23

VII. The Allegations of the Complaint Make Clear That
     There Was Willful Misconduct on the Defendant's
     Part in Running the Plaintiff Over, Failing to

i

Get Him Prompt Medical Attention, and Arresting
Him Without Cause. . . . . . . . . . . . . . . . 24

VIII.   The Complaint States a Claim for Intentional
Infliction of Emotional Distress . . . . . . . .  28

IX.   The Plaintiff Should Be Granted Leave to Replead
The Respndeat Superior Claim If Necessary . . . . . 29

X.   Because There Was No Reasonable Cause for Arrest,
The Defendant' Attack on the False Imprisonment
Claim Fails. . . . . . . . . . . . . . . . . . . 30

XI.   The Complaint Adequately Alleges Outrageous or
Reckless Conduct Sufficient to Justify Punitive
Damages . . . . . . . . . . . . . . . . . . . . 30

XII.  To the Extent Necessary, the Defendant's Motion
Should Be Granted Without Prejudice to the Plaintiff's
Right to Replead . . . . . . . . . . . . . . . . .31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . 32

## TABLE OF AUTHORITIES

**Page**

*Alston v. City of Camden*, 168 N.J. 170,
773 A.2d 693 (2001). . . . . . . . . . . . . . . . . 25

*Ammlung v. City of Chester*, 355 F.Supp. 1300,
1307 (E.D. Pa. 1973). . . . . . . . . . . . . . . . 14

*Bellmon v. City of Philadelphia*, 2012 WL 3994839
(E.D. Pa.). . . . . . . . . . . . . . . . . . . . . 4

*Boyer v. City of Philadelphia*, 2015 WL 9260007 (E.D. Pa.)21

*Brown v. Makofka*, 644 Fed. Appx. 139, 143 (3d Cir. 2016).13

*Castillo-Perez v. City of Elizabeth*,
2014 WL 1614845, 11 (D.N.J.). . . . . . . . . . . 15

*County of Sacramento v. Lewis*, 523 U.S. 833,
118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) . . . . . . 1

*Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985). . . . . . 31

*Deary v. Three Un-Named Police Officers*,
746 F.2d 185, 191 (3d Cir. 1984). . . . . . . . . . .8

*Del Tufo, Executor of the Estate of Kiken v. Twp.
of Old Bridge*, 147 N.J. 90, 101 (1996). . . . . . . 23

*Dennis v. DeJong*, 867 F.Supp.2d 588, 536 (E.D. Pa. 2011).21

*Donahue v. Gavin*, 280 F.3d 371, 377 (3d Cir. 2002). . . .15

*Dunlea v. Twp. of Belleville*, 349 N.J. Super. 506,
793 A.2d 888 (App. Div. 2002). . . . . . . . . . .27

*Epifan v. Roman*, 2014 WL 4828606 (D.N.J.). . . . . . . 7

*Ferguson v. Commonwealth of Pennsylvania*,
2009 WL 723426 (W.D. Pa.). . . . . . . . . . . . . 5

*Garlanger v. Verbeke*, 223 F.Supp.2d 596, 606(D.N.J. 2002)16

*Groman v. Twp. of Manalapan*, 47 F.3d 628,
635 (3d Cir. 1995). . . . . . . . . . . . . . . . 13

*Hines v. Proper*, 442 F.Supp.2d 216, 221-22
 (M.D. Pa. 2006). . . . . . . . . . . . . . . . .10

*Jordan v. Cashman*, 2011 WL 2039170, 6 (E.D. Pa.). . . . . 8

*Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004). . . .17

*Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). .17

*Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). . . .20

*Luck v. Mount Airy No. 1, LLC*, 901 F.Supp.2d 547
 (M.D. Pa. 2012). . . . . . . . . . . . . . . . .10

*McNamara v. Buehler*, 2016 WL 3965193, 5 (D.N.J.). . . . 21

*McKinney v Passaic County Prosecutor's Office*,
 2008 WL 4104448, 5 (D.N.J.). . . . . . . . . . . 21

*Middlebrooks v. Alba*, 2011 WL 3651337,
 7 n. 10 (D.N.J. 2011). . . . . . . . . . . . . .21

*O'Donnell v. Tinicum Tp.*, 110 F.Supp.3d 571
 (E.D. Pa. 2015). . . . . . . . . . . . . . . . . 3

*Ortiz v. City of Camden*, 2015 WL 3603933, 3 (D.N.J.). . .23

*Palma v. Atlantic County*, 53 F. Supp.2d 743,
 768 (D.N.J. 1999). . . . . . . . . . . . . . . .14

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151,
 150 L.Ed.2d 272 (2001). . . . . . . . . . . . . 16

*Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). . . . 31

*Sharrar v. Felsing*, 128 F.3d 810, 827 (3d Cir. 1997). . .16

*Smart v. Winslow*, 2015 WL 5455643, 6 (D.N.J.). . . . . . 21

*Snatchko v. Peters Tp.*, 2012 WL 6761369 (W.D. Pa.). . . .10

*State v. Kazanes*, 318 N.J. Super. 421, 724 A.2d 285
 (App. Div. 1999). . . . . . . . . . . . . . . .11

*Swingon v. Simonson*, 2016 WL 2342040, 5 (E.D. Pa.). . . .21

*Taylor v. Moletsky*, 2010 WL 299747 (E.D. Pa.). . . . . . 4

*Thomas v. City of Chester*, 2016 WL 1106900, 4 (E.D. Pa.).21

*Tice v. Cramer*, 133 N.J. 347, 627 A.2d 1090 (1993). . . 24

*Tirado v. Montgomery County, Pa.*,
     2013 WL 1285487, 9 (E.D. Pa.). . . . . . . . . . . .21

*Torres v. Borough of Lindenwold*, 2015 WL 3949076 (D.N.J.).7

*Watson v. Witmer*, -- F.Supp.3d -- ,
     2016 WL 1623998 (M.D. Pa.). . . . . . . . . . . . .8

*Zampetis v. City of Atlantic City*,
     2015 WL 9294668, 5 (D.N.J.). . . . . . . . . . . . 32

The Plaintiff, Michael Windmaier ("the Plaintiff"),
submits this Memorandum in Opposition to the Motion of the
Defendants, Police Chief Eugene Venable ("Venable"),
Detective Silas Smith, Jr. ("Silas"), Lt John Rodrigues
("Rodrigues"), Detective Rui Domingues ("Domingues"),
Sergeant Joseph Frost ("Frost"), and Anthony Campos
("Campos")("the Defendants"), to Dismiss the Complaint.
For the reasons set forth below, the Defendants' Motion
should be denied.

## Argument

### I. The Plaintiff Stated a Claim for Excessive Force Where the Defendants' Conduct Most Certainly Shocks the Conscience.

The Defendants remarkably argue that the conduct
alleged in the Complaint did not "shock the conscience"
(Document 46-2, pp. 25-26).  They furthermore contend that
they were "justified in giving chase, . . . ." (*Id.* at p.
26).  However, their reliance upon *Davis v. Twp. of
Hillside*, 190 F.3d 167 (3d Cir. 1999)(Document 46-2, p.
26), is misplaced.  There, the issue was whether damages
occasioned from a high speed chase of a suspect were
compensable.  The court looked to the United States Supreme
Court case of *County of Sacramento v. Lewis*, 523 U.S. 833,
118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  Signature to that
decision was the finding that "high speed chases *with no*

1

*intent* to harm suspects physically or to worsen their legal plight should not give rise to liability . . . ." *Davis*, 190 F.3d at 170 (*citing Lewis*).  In *Lewis*, the chase ended with the police bar "bumping into the rear" of the suspect's car, causing a collision in which the plaintiff was injured.  *Id.*  The Third Circuit noted that it is "conduct intended to injury in some way unjustifiable by any government interest [that] is the sort of official action most likely to rise to the conscience-shocking level."  *Id.*

Here, the Defendants' sole factual argument in support of dismissal is thus:

> In the present case, Plaintiff admitted that he ran when the officers approached a group of individuals, including Plaintiff, who were gathered on the street. A pursuit ensured between Plaintiff, by foot, and Officer Smith by vehicle.  Plaintiff did not stop running until he was allegedly struck by the vehicle operated by Officer Smith.  Accordingly, the Police Defendants were justified in giving chase and are Immune from liability.

(Document 46-2, p. 28).

The Defendants, perhaps intentionally, ignore the gross and detailed allegations of the Complaint.  Those allegations establish that, lacking any probable cause to believe that the Plaintiff had committed a crime, the Defendant officer chose to pursue the pedestrian Plaintiff in a vehicle, driving the wrong way on a one-way street,

2

following him onto a grassy area, and aiming the vehicle at
the Plaintiff. After running over the Plaintiff, the
subject Officer rolled the vehicle back over his person in
a blatant disregard of his well-being.

This case is akin to *O'Donnell v. Tinicum Tp.*, 110
F.Supp.3d 571 (E.D. Pa. 2015), where the police gave chase
to a motorcycle but were unable to get the driver to stop.
After extensive efforts to get the driver to stop, the
police officer backed his vehicle up from a standing stop
and collided with the cycle's back right fender. *Id.* at
576. The collision caused a crash. *Id.* There, the court
found that a "jury might reasonably infer from these facts
that,

> having failed in multiple attempts to stop O'Donnell,
> Gaul decided to knock him off his motorcycle in order
> to prevent O'Donnell from getting away yet again. A
> jury could also read Gaul's incident report as stating
> that he "attempted to stop the bikes with [his]
> vehicle" by hitting them intentionally. Accordingly,
> a genuine factual question exists regarding Gaul's
> intent, and he is not entitled to summary judgment
> based on the alleged absence of an intentional
> seizure.

*Id.*

In *O'Donnell*, the court concluded that the force used
was excessive. *Id.* at 577. The crime for which the
defendant was arrested was not severe; he was not riding
his motorcycle on a public roadway, but on a dirt trail; he

3

did not pose a danger to the officer, who was sitting in his police car off the trial, or to the public in general; there was no basis to believe that he was violent or dangerous or armed; he was not actively resisting arrest; and the defendant did not have other suspects with him. *Id.* "In sum, none of the relevant factors militated in favor of Gaul using the level of force that he did to effect" arrest, "and that force was unreasonable under the circumstances." *Id.*

Likewise, in *Taylor v. Moletsky*, 2010 WL 299747 (E.D. Pa.), "one critical question still remain[ed]: did [the officer] intend to seize Plaintiff by striking him with her police vehicle, or was it purely an accident, . . . .?" *Id.* at 6. There, it was alleged that the officer "pursued and ultimately seized [the plaintiff] by intentionally running him over with her police vehicle." *Id.* The court held that, if the officer's actions were ultimately proved intentionally, then "clearly a jury could potentially find that said actions were malicious and were intended to cause a deprivation of Plaintiff's constitutional rights . . . ." *Id.* Hence, summary judgment on qualified immunity was precluded. *Id.*

In *Bellmon v. City of Philadelphia*, 2012 WL 3994839 (E.D. Pa.), two officers began pursuing the plaintiff while

4

he was driving. The plaintiff crashed his car, then got

out and began running.  The officers continued to pursue

and eventually hit the plaintiff with their car.  The

plaintiff testified that, before being hit, he heard a car

accelerate.  The officers moved for summary judgment,

alleging that they accidently hit the plaintiff.  The court

denied summary judgment on the grounds that there was

evidence from which a reasonable jury could infer that the

police officer acted intentionally.  *Id.* at 6.

The same result, on similar facts, was achieved in

*Taylor v. Moletsky*, 2010 WL 299747 (E.D. Pa.), where police

struck the pedestrian plaintiff, and summary judgment was

denied based on a disputed issue as to the officer's

intention.  *Id.* at 2.  *Accord, Ferguson v. Commonwealth of

Pennsylvania*, 2009 WL 723426 (W.D. Pa.)(summary judgment

denied where plaintiff testified the defendant saw her

standing by the side of the road and failed to brake prior

to hitting her).

Significantly, all of the aforementioned cases

represented denials of police officer motions at advanced

stage of litigation – post-discovery – when the record has

been developed.  Here, the Defendant seek pre-Answer

dismissal of the Plaintiff's Complaint when no evidence

whatever has been adduced, much less any evidence

contradicting the allegations contained in the Complaint. Those allegations, taken at face value and not even viewed in the light most favorable to the Plaintiff, establish that (a) the driver of the police vehicle said, "I'm gonna kill you" (Complaint, ¶25); the Plaintiff fled on foot off the roadway (*Id.* at ¶26); the police vehicle drove the wrong way on a one-way street toward the Plaintiff, attempting to run the Plaintiff over (*Id.* at ¶27); the police vehicle drove onto the grass after the Plaintiff (*Id.* at ¶28); the police vehicle drove at the Plaintiff at an angle when he was at a fence to block his exit (*Id.* at ¶29); the Plaintiff raised his hands in an attempt to brace himself from the impact, but the vehicle knocked him to the ground and dragged over him while driving over his leg (*Id.* at ¶30); the vehicle drove directly over the Plaintiff's leg and came to a stop *on top of* him (*Id.* at ¶31); the Officer drive backward when he saw the Plaintiff under the vehicle (*Id.* at ¶32); the Plaintiff saved his head from being run over (*Id.* at ¶33); the vehicle drove over the Plaintiff's torso (*Id.* at ¶34); and the Officer refused to get the Plaintiff medical attention (*Id.* at ¶¶37-43).

These allegations, ignored by the Defendants, establish conduct on the part of the Smith that shocks the conscience: Smith pursued the Plaintiff in his vehicle

when the Plaintiff, on foot, ran off road.  Smith
intentionally aimed the vehicle at him, running him over,
and ran it back over him.  Thereafter, he refused to get
the Plaintiff prompt medical attention.  The run-over was
hardly the result of a chase in which the vehicle
unintentionally caused harm.  Instead, Smith used the
vehicle to "stop" the Plaintiff from escaping the grassy
area; and his conduct after the first run-over suggests
that he intended to run the Plaintiff over not once but
twice.

In *Epifan v. Roman*, 2014 WL 4828606 (D.N.J.), the
court denied summary judgment to the defendant officer
where there was conflicting testimony from the plaintiff
and defendants as to whether the defendant officer
intentionally hit the fleeing plaintiff with his vehicle,
and whether the defendant officer intentionally dragged the
plaintiff under the vehicle after hitting him.  *Id.* at 15.

In *Torres v. Borough of Lindenwold*, 2015 WL 3949076
(D.N.J.), the facts in the plaintiff's complaint stated a
claim for excessive force because, according to it, the
defendant officer was the driver of an unmarked police car
who ran over the plaintiff's leg in an effort to effect his
arrest.  *Id.* at 4.

7

Accordingly, the Defendants' grossly simplistic argument that they "were justified in giving chase and are immune from liability" (Document 46-2, p. 45) fails, and their Motion should be denied.

## II. The Defendants Lacked Probable Cause for the Plaintiff's Arrest, Thereby Sustaining the False Arrest Claim.

### Standard of Review

Generally, the existence of probable cause is a factual issue. *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 191 (3d Cir. 1984).

### A. The Question of Probable Cause is a Factual One Inappropriate for Resolution at This Juncture; And Is Lacking Based On the Allegations and Inferences Therefrom in the Complaint.

In *Watson v. Witmer*, -- F.Supp.3d -- , 2016 WL 1623998 (M.D. Pa.), the allegations of the complaint supported a plausible inference that Corporal Witmer may have lacked probable cause. *Id.* at 4. The court found "that a determination that probable cause must have existed would be premature at this procedural posture." *Id.* Such "finding obviate[d] the need to consider Watson's argument that exculpatory evidence dissipated any probable cause for the initial arrest." *Id.* *And see, Jordan v. Cashman*, 2011 WL 2039170, 6 (E.D. Pa.)(denying motion to dismiss false arrest and malicious prosecution claims for failure to

plausible allege there was no probable cause for the Plaintiff's arrest and prosecution").

Here, the Plaintiff's pleading alleges, *inter alia*, that the Defendants arrested "him without authority or cause" (Document No. 16, ¶76); and that the Defendants did not, and could not, have reasonably believed that the arrest was lawful in light of clearly established law and/or the information they possessed at the time (*Id.* at ¶77). In Paragraph 58, furthermore, the Plaintiff alleges that a female officer told the Plaintiff that "Newark's gonna give you a big check for this"; that no accident, stop, or force report was issued, no witness statements gathered, no notification of chain of command or crime scene photographs taken at the scene in direct conflict with Newark Police Standard Operating Procedures and US Department of Justice's and US Attorney General's Office recommendations subsequent to their investigation of the Police Department (*Id.* at ¶63); that no charges were filed for possession of a Controlled Dangerous Substance, weapons, or destruction of evidence (*Id.* at ¶64); and that, subsequently, all charges were dropped prior to trial without notice (*Id.* at ¶65).

These allegations are more than sufficient to allege that the Defendants lacked probable cause to effectuate the

9

Plaintiff's arrest. *C.f.*, *Hines v. Proper*, 442 F.Supp.2d
216, 221-22 (M.D. Pa. 2006)("For example, there are no
allegations that the arrest warrant was invalid for want of
probable cause or that Defendants lied to obtain the
warrant, or that Defendants unreasonably relied upon the
warrant when they arrested Plaintiff . . . .").

In *Snatchko v. Peters Tp.*, 2012 WL 6761369 (W.D. Pa.),
the court denied the motion to dismiss the false arrest
claim, to wit:

> Here, the factual allegations in the Complaint, when
> accepted as true, may give rise to a viable cause of
> action. Plaintiff sufficiently pleaded the first
> element to a valid cause of action for false arrest,
> and the only issue that remains is whether he has met
> his burden in showing that the facts as alleged
> support an initial finding that probable cause did not
> exist at the time of the arrest. This issue is best
> left for the fact finder, and the finding of probable
> cause at the magistrate level in Washington County
> will not be given preclusive effect in this Court at
> this time. Accordingly, insofar as Count One asserts
> a viable false arrest claim under the Fourth
> Amendment, it will survive the motion to dismiss for a
> later determination of whether probable cause existed
> at the time of the arrest by either a factfinder at
> trial or this Court at the summary judgment stage with
> the benefit of a more complete record of what truly
> occurred on November 15, 2011 at Vasko Dodge.

*Id.* at 1-2.

In *Luck v. Mount Airy No. 1, LLC*, 901 F.Supp.2d 547
(M.D. Pa. 2012), the plaintiffs sufficiently pled lack of
probable cause. They alleged that the defendants relied on
the information that other defendants provided; however,

they did not question the plaintiffs or pursue any other investigation. *Id.* at 555-56. They acted solely on the command of the fellow defendants. *Id.* at 556.

> . . . . While defendants claim they had information
> that plaintiffs were not permitted on the premises,
> based on the allegations in the complaint, defendants
> lacked any information to support the belief that
> plaintiffs knowingly lacked the privilege to be on the
> casino property. Therefore, we will deny defendants'
> motion to dismiss based on plaintiffs' allegations
> concerning probable cause to support of plaintiffs'
> federal and state law claims of false arrest, false
> imprisonment, and malicious prosecution.

*Id.*

### B.    There Was No Probable Cause That the Plaintiff Committed Either Charged Crime.

Upon review, it is evident that the Defendants could not have possessed reasonable cause to believe that the Plaintiff committed either crime he was charged with.

#### i.    Wandering with Intent to Obtain CDS

In *State v. Kazanes*, 318 N.J. Super. 421, 724 A.2d 285 (App. Div. 1999), the court was "persuaded that the wandering element" of N.J.S.A. 2C:33-2.1,

> . . . as well as the other verbs, to remain, to prowl,
> require more than the mere going from point A to point
> B, engaging in a drug transaction and leaving. The
> statute requires some sense of hanging about or
> lingering in attempt to make a drug connection.

*Id.* at 426, 288.

Even in *Kazanes*, there was no evidence to satisfy this standard. The officer testified that he observed the

defendant speaking with a known drug dealer on a bicycle,
and a hand-to-hand exchange.  "All it established was that
there was a meeting and an exchange.

> There is no testimony from Aboud regarding defendant's
> movements before the meeting with the drug dealer.
> There is no evidence that Aboud observed defendant in
> the neighborhood prior to the meeting with the drug
> dealer.  There is no evidence regarding the length of
> time Aboud had observed defendant prior to the
> exchange.  We do not know whether defendant and the
> "dealer" were in movement on their bicycles when they
> met and effected an exchange.

*Id.* at 426-27.  Hence, there, the conviction for wandering
was vacated.  *Id.* at 427.

In this case, there is an absolute dearth of any
evidence whatever suggesting that the Defendants could have
reasonably believed that it had probable cause that the
Plaintiff was guilty of this crime.  Taking the allegations
of the Complaint as true, the Plaintiff left the Riviera
Hotel to pick up breakfast at the Exxon Station (Complaint,
¶16); at the Exxon Station, the Plaintiff purchased two
bagels and Gatorades, carried in a plastic shopping bag
(*Id.* at ¶17); on return to Riviera, he observed an
acquaintance by the name of Kadeem crossing Clinton Avenue
near Stratford Place (*Id.* at ¶18); the Plaintiff invited
Kadeem back to the Riviera, which Kadeem agree to (*Id.* at
¶19); as the Plaintiff and Kadeem were walking back to the
hotel, a Jeep Cherokee and minivan approached them, each

occupied solely by one driver (*Id.* at ¶20); the driver of the Jeep rolled down his window and stated, "Drop the fucking gun!" (*Id.* at ¶21); and the Plaintiff asked Kadeem if he had a gun (*Id.* at ¶22). Nowhere is it alleged that the Plaintiff was lingering or hanging around in order to make a drug connection. There is an utter dearth of evidence that would have given any of the Officers probable cause to believe that the Plaintiff had committed the crime of Wandering with Intent to Obtain CDS.

The Defendants' sole factual argument in this regard is that there "was probable cause" because "the officers observed" the Plaintiff "in a group and he appeared to be in possession of drugs" (Document 46-2, p. 30). This conduct fails to rise even to the level of conduct observed in *Kazanes*, which failed to give the officer probable cause to believe the defendant committed the crime of Wandering.

ii.  Resisting Arrest

The resisting arrest charge could not have provided probable cause for the arrest ab initio. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995). *See, e.g., Brown v. Makofka*, 644 Fed. Appx. 139, 143 (3d Cir. 2016)(". . . . But the District Court incorrectly justified the arrest by citing the resistance to that arrest").

13

Here, the Defendants erroneously argue that the Officers had probable cause to believe that the Plaintiff *would* resist arrest (Document 46-2, p. 31), ignoring the above law.  Even aside from that law, it escapes logic to conclude that officers could have probable cause to arrest for conduct occurring in the course of the arrest, not before it.

As a result, the Defendant could not have had probable cause to believe that the Plaintiff had committed either offense.

### C.   To the Extent Necessary, Limited Discovery Should Be Permitted.

While it is true that good faith and probable cause constitute a defense to a police officer's civil rights liability, "this standard should be applied after the facts of the case are developed, rather than on a preliminary motion to dismiss." *Ammlung v. City of Chester*, 355 F.Supp. 1300, 1307 (E.D. Pa. 1973).

The Defendants' Motion should also be denied so that discovery may be taken on the issue of reasonable cause. *See, Palma v. Atlantic County*, 53 F. Supp.2d 743, 768 (D.N.J. 1999)("Finally, I shall deny without prejudice defendants' motion to dismiss the Amended Complaint . . . on the basis of qualified immunity, and permit defendants

14

to renew their motion after a period of limited discovery
on the issues of the . . . true motive in arresting,
detaining, and prosecuting [the plaintiff], and whether
these defendants could reasonably believe that probable
cause existed for their actions"); *Castillo-Perez v. City
of Elizabeth*, 2014 WL 1614845, 11 (D.N.J.)(" . . . . As to
these matters, the Defendants are in control of many of the
material facts.  I will afford the parties the opportunity
for limited factual discovery as to the circumstances
surrounding the initial stop and the arrest before
considering summary judgment").

Hence, the Defendants' Motion, if not denied on the
merits, should be denied without prejudice.

### III. The Defendants Are Not Entitled to Qualified Immunity On the Face of the Complaint.

Law

The doctrine of qualified immunity shields government
officials from suits seeking damages under §1983 insofar as
their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable
person would have known.  *Donahue v. Gavin*, 280 F.3d 371,
377 (3d Cir. 2002).  In §1983 cases involving alleged
violations of the Fourth Amendment, the inquiry is whether
a reasonable officer could have believed that his or her

conduct was lawful, in light of the clearly established law

and the information in the officer's possession at the time

of the alleged violation.  *Sharrar v. Felsing*, 128 F.3d

810, 827 (3d Cir. 1997).

In determining whether a police officer is entitled to

qualified immunity, any disputed issues of historical fact

relevant to the court's determination must be submitted to

a jury.  *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 606

(D.N.J. 2002).

To determine whether a governmental official is

entitled to qualified immunity, a court applies either or

both of the two prongs of analysis outlined in *Saucier v.*

*Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

One prong asks whether, taken in the light most favorable

to the party asserting the injury, the facts alleged show

that the officer's conduct violated a constitutional right.

*Id.* at 201.

## Application

Under the first prong of *Katz, supra,* to

determine whether an officer's use of force is objectively

reasonable, courts assess a number of factors, including

the severity of the crime, whether the suspect poses an

immediate threat to the safety of the other officers or

public, whether he was fleeing, whether he is violent or

16

dangerous, the duration of the action, whether the action takes place in the context of effectuating an arrest, the possibility he may be armed, and the number of people to be arrested at one time. *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004).

In cases such as that currently before the Court, involving claims for unlawful arrest, false imprisonment, and malicious prosecution, the availability of qualified immunity "turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain, and initiate criminal prosecution." *Id.* at 607. Because the Defendants raise qualified immunity in the context of a Motion to Dismiss, the only facts upon which the Court can properly rely in determining the objective reasonableness of the belief that probable cause existed are those allegations contained in the Complaint. *Id.*

The issue to be resolved by the Court at this stage of litigation is limited to whether, accepting the Plaintiff's allegations as true and affording him the benefit of all reasonable inferences that can be drawn therefrom, "there is any set of facts [he] can prove that would support a denial of immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

17

Here, applying this standard, the Court should be "unable to conclude that the facts as alleged . . . are insufficient to support a finding that no reasonable police officer could have believed that probable cause existed . . . ." *Id.* at 608.  The Defendants here, lacking any probable cause to arrest the Plaintiff, pursued the pedestrian by car, drove against traffic, and followed the Plaintiff onto a grassy area.  The Defendants proceeded to aim the vehicle at the Plaintiff in an attempt to prevent his escape; ran over the Plaintiff; and, when realizing the Plaintiff was under the vehicle, backed *over* him again (only missing his head because the Plaintiff protected himself).  When the Plaintiff pleaded for medical assistance, the Defendants delayed getting it for him.  Under these circumstances, it cannot be said that the Defendants believed their conduct was lawful.  Indeed, when the Officers came to see him in the hospital, they made statements to the Plaintiff to the effect that the City had acted unlawfully.

Furthermore, as set forth above, the Defendants could not reasonably have believed that they had probable cause to arrest the Plaintiff.  As such, any qualified immunity fails.

Applying the factors set forth in *Kopec, supra,* the "severity" of the one alleged crime that could have

supported the charged acts — Wandering (given that Resisting Arrest could not establish probable cause — was far from "severe." It did not involve violence or threatened violence. Though Defendant Smith accused the Plaintiff of having a gun, he was not carrying one and posed no immediate threat to the safety of the other officers or public. While he was fleeing, there was no evidence that he was either violent or dangerous. The duration of the action was relatively short, and Officer Smith evidently never believed that the Plaintiff was actually armed, since his repeated questions of him involved demanding to know where the gun was.

The Defendants contend that the Complaint does not apprise the Defendants of the claim asserted against them other than stating that Smith was involved in depriving him of his rights (Document 46-2, pp. 34-35). This is a gross understatement and based on an ignorance of the detailed facts of the Complaint, indicating that a fellow Officer came to the scene and refused to help the Plaintiff and that, in the hospital, the Defendants suggested that the Plaintiff would be compensated for the harm inflicted upon him.

The Defendant confuses the standard of review on Motion to Dismiss with one for Summary Judgment, writing

19

that the "Plaintiff fails to **prove** or even set forth that
any of the officers violated any clearly established law at
the time of Plaintiff's arrest" (Document 42-6, p.
35)[**emphasis added**].  At this stage of proceedings,
obviously, the Plaintiff need not "prove" anything.

Nevertheless, the Defendants' argument circles back to
probable cause – that was lacking.  Because there was no
probable cause to arrest the Plaintiff, the Officers could
not have deemed their actions reasonable under the
circumstances "to prevent his escape from arrest" (Document
42-6, p. 35).  And, as discussed above, there could be no
probable cause to believe the Plaintiff would resist arrest
(*Id.*).  Because the Defendants' argument rests exclusively
on their reasonable cause, and because such reasonable
cause was lacking, their Qualified Immunity argument fails.

In any event, qualified immunity will be upheld on a
12(b)(6) motion only when the immunity is established on
the face of the complaint.  *Leveto v. Lapina*, 258 F.3d 156,
161 (3d Cir. 2001).  The face of the Complaint here
undermines any assertion of such immunity.  Indeed, in
*Torres, supra*, the court denied dismissal of the
plaintiff's complaint on the basis of qualified immunity
because "the facts alleged in the Complaint set for a
plausible claim for the use of excessive force in violation

20

of the Fourth Amendment." 2015 WL 3949076 at 4. *And see,*
*Middlebrooks v. Alba*, 2011 WL 3651337, 7 n. 10 (D.N.J.
2011)("indeed, a police officer cannot be entitled to
qualified immunity if the officer then runs over the
suspect with his car or commits an analogous act laden with
the dangerous of physical injury to the suspect").

### IV.  The Plaintiff's Claims For Respondeat Superior/ Monell Liability Against the City Should Remain Pending Discovery.

To the extent that the *Monell* claim is found lacking,
the Court should give the Plaintiff leave to amend. *See,*
*e.g., Tirado v. Montgomery County, Pa.,* 2013 WL 1285487, 9
(E.D. Pa.); *Dennis v. DeJong*, 867 F.Supp.2d 588, 536 (E.D.
Pa. 2011); *Swingon v. Simonson*, 2016 WL 2342040, 5 (E.D.
Pa.)(granting leave to file a third amended complain to re-
plead *Monell* claim); *Thomas v. City of Chester*, 2016 WL
1106900, 4 (E.D. Pa.); *McNamara v. Buehler*, 2016 WL
3965193, 5 (D.N.J.); *Smart v. Winslow*, 2015 WL 5455643, 6
(D.N.J.); *McKinney v Passaic County Prosecutor's Office*,
2008 WL 4104448, 5 (D.N.J.).

In *Boyer v. City of Philadelphia*, 2015 WL 9260007
(E.D. Pa.), the defendants argued that the plaintiff's
*Monell* claims failed to identify any "actual policy or
custody . . . that was either issued or ratified by a
policymaker." *Id*. at 7. But the "standard articulated by

21

defendants [wa]s too high." *Id.* The court noted that the Supreme Court held that *Monell* claims are subject to the same notice pleading requirements as any other claim. *Id.* (citing, *Leatherman, supra*, 507 U.S. at 166-67). The court further noted that though "the details of this alleged policy, custom or practice are less than clearly articulated in the complaint," the court "shall grant Plaintiff the opportunity to take discovery on this claim." *Id.* at 7 (citing, *Garcia v. Newtown Twp.*, 2010 WL 785808, 8 (E.D. Pa.)).

Here, at worst, the Plaintiff should be granted the opportunity to take discovery on his *Monell* claim so that, if need be, he can discover the needed details to allege such claim – details that are in the Defendant's possession. The same is true as to the alleged Section 1985 claim. Indeed, the supervising Defendants could be liable if aware of a practice or unconstitutional conduct by officers, or failing to implement any training on the use of force at all. *See, Torres, supra*, 2015 WL 3949076, 5.

It is worthy of note that the Defendants seek to dismiss claims not contained in the Plaintiff's Complaint: Sections 1985 and 1986 (Document 42-6, p. 35).

22

**V.  In Light of the Evident Lack of Probable Cause, the Defendants' Argument Against the Claim for Violation of the New Jersey Constitution, Article 1, Section 7, Fails.**

In light of the demonstrated lack of probable cause for the Plaintiff's arrest, detailed above, the Defendants' attack on the claim under the New Jersey Constitution (Document No. 42-3, p. 41) fails in its entirety.

**VI.  The Defendant Breached a Duty Owed the Plaintiff Sufficient to Establish Gross Negligence.**

The Defendants argue that they breached no duty owed the Plaintiff (Document No. 42-6, p. 42).  However, the Defendants cite no law whatever standing for the proposition that it "did not owe, violate or breach any duty to Plaintiff" (*Id.*).  Research by the undersigned, in fact, is to the contrary.  *See, e.g., Ortiz v. City of Camden*, 2015 WL 3603933, 3 (D.N.J.)("The police officer's duty of care to an arrestee requires the exercise of reasonable care to preserve the life, health, and safety of the person in custody").  *And see, Del Tufo, Executor of the Estate of Kiken v. Twp. of Old Bridge*, 147 N.J. 90, 101 (1996).

Here, it cannot colorably be argued that the Defendants acted "reasonably" in effectuating this unlawful detention of the Plaintiff.  The Defendants had the duty to exercise reasonable care, breaching it by chasing the

pedestrian Plaintiff by car, aiming its vehicle at him, running the Plaintiff over with the car twice, and then denying the Plaintiff prompt medical attention.

### VII. The Allegations of the Complaint Make Clear That There Was Willful Misconduct on the Defendant's Part in Running the Plaintiff Over, Failing to Get Him Prompt Medical Attention, and Arresting Him Without Cause.

A read of the Complaint itself impeaches the Defendant's contention that its action was not "willful misconduct" such as would pierce the Tort Claims Act immunity (Document No. 42-3, p. 43). Nevertheless, it attempts to paint what can only be described as very deliberate misconduct on its part as "neglect" (Document No. 42-3, p. 41).

The case law cited in support of the Defendant's argument underscores the fallacy of its reasoning. *Tice v. Cramer*, 133 N.J. 347, 627 A.2d 1090 (1993)(Document No. 42-3, pp. 44-45), involved an accident in which the defendant's vehicle – fleeing police – collided with a vehicle being driven by a third party. In such instance, there is but no question that the police had no intention to injure or harm the third party. Indeed, there, the Court's "conclusion [wa]s based on the language" of an Appellate Division decision stating as a general proposition that the "decisive issue in this case is

whether a police officer is liable for damage caused by a vehicle operated by a fleeing law violator" being pursued by the police. *Id.* at 357, 1095. Here, the injury or damage was caused to the Plaintiff himself, when he was run over deliberately by the Defendant's vehicle while on foot.

*Alston v. City of Camden*, 168 N.J. 170, 773 A.2d 693 (2001)(Document No. 42-3, p. 45), likewise underscores that the immunity of which the Defendant speaks arises when the police negligently cause harm to a third-party, in that case negligently colliding with the vehicle of another during chase.

*Fielder v. Stonack*, 141 N.J. 101, 661 A.2d 231 (1995)(Document No. 42-3, pp. 35-36) indicates that "willful misconduct" in the context of police chases "is the equivalent of reckless disregard for safety." *Id.* at 124, 242. There, though the Court was satisfied that the police was entitled to immunity as a matter of law, it noted that that officer "must prove that there [wa]s no disputed issue of material fact" as to "whether there was a direct order not to engage in the pursuit" or continue it, whether the officer "knew of such order, and whether he knowingly and willfully violated that order." *Id.* at 128, 244. Summary judgment was therefore inappropriate because there was a disputed issue of fact as to whether the

officer's conduct amounted to willful misconduct. *Id.* at
245.

The Defendants erroneously contend that "there is no
indication that the officers" engaged in willful misconduct
(Document 42-6, p. 47). This ignores that there was no
probable cause to pursue the Plaintiff, and that the
Defendants effectively ran over the Plaintiff twice with
their vehicle.

As noted, the Complaint alleges, *inter alia*, that the
Smith vehicle "was observed driving opposite traffic on the
one-way Avon Avenue toward the Plaintiff" and attempting to
run him over (Complaint, ¶27). It further alleges that the
vehicle pursued the Plaintiff "onto the grass after him"
(*Id.* at ¶28). The vehicle headed toward the Plaintiff "at
an angle attempting to block his exit, while accelerating"
(*Id.* at ¶29). The vehicle struck the Plaintiff, knocked
him down, and dragged him while running over his leg (*Id.*
at ¶31). The vehicle "drove directly over the Plaintiff's
leg prior to coming to a stop on top of him" (*Id.* at ¶31).
Thereafter, Smith "reversed the vehicle and drove backward
with complete indifference to causing additional bodily
injury to the Plaintiff" (*Id.* at ¶32). The Plaintiff saved
his head from being run over (*Id.* at ¶33), and Smith "drove

directly over the Plaintiff's torso with the [vehicle's] left front tire" (*Id.* at ¶34).

These allegations are ample to support a claim for reckless, if not malicious, misconduct on the Defendats' part in intentionally using a vehicle to pursue a pedestrian over a grassy area, aiming the vehicle at him, and running him over more than once. Furthermore, it alleges that neither Officer at the scene gave the Plaintiff prompt medical attention that he clearly needed. These allegations establish far more than "negligence," as the Defendants contend (Document 46-2, p. 47).

Here, minimally, the Defendants' Motion must be denied where there can be no showing that they is entitled to immunity under the *Fielder* test; and there will certainly be a factual dispute as to whether the Defendants acted with willful misconduct. It is altogether possible – if not likely – that Smith pursued the Plaintiff in a vehicle when the Plaintiff was on foot, in an urban area, in direct contravention to an order regarding such pursuit.

In *Dunlea v. Twp. of Belleville*, 349 N.J. Super. 506, 793 A.2d 888 (App. Div. 2002), the court found that the defendant officer "failed to activate any warning lights or even a turn signal" when abruptly turning into oncoming traffic at a fast rate of speed. *Id.* at 514, 891. Such

conduct "serve[d] to avoid warning innocent motorists of the approaching police vehicle" that presented "a jury question." *Id.* In that case, the relevant standard was one of recklessness, also found to defeat immunity. *Id.* at 511, 892.

The Defendants are not entitled to immunity based on the facts presented in the Complaint.

### VIII.   The Complaint States a Claim for Intentional Infliction of Emotional Distress.

The Defendants make a weak stab at trying to dismiss the Plaintiff's Intentional Infliction claim (Document 42-6, p. 47). First, they suggest that that claim of the Complaint cannot withstand dismissal because the "Plaintiff does not identify the intentional extreme or outrageous conduct on behalf of the officers that caused his emotional distress" (Document No. 42-3, p. 48). This argument is as puzzling as it is weightless. The Defendants make this argument by reading Count IX in a vacuum, ignoring that Paragraph 114 of the Complaint states that the Plaintiff "repeats the above allegations." The "above allegations" set forth with great detail the Defendant's act of pursuing the pedestrian Plaintiff in a vehicle over non-paved surfaces, aiming the vehicle at the Plaintiff's person, and running him over at least two times. The Defendants

further denied the Plaintiff much-needed medical attention

after running him over, despite the fact that he was in a

great deal of pain, begging for help, and of no threat to

the Officers.  The Defendants' actions, furthermore, were

not borne of probable cause that the Plaintiff had

committed any crime.  Hence, it is far from tethered to the

Complaint that the Defendants claim the "Plaintiff does not

identify the intentional extreme or outrageous conduct"

(Document 42-3, p. 48).

### IX.  The Plaintiff Should Be Granted Leave to Replead the Respondeat Superior Claim If Necessary.

The Plaintiff admits that, as pled, the Respondeat

Superior claims is not sustainable.  However, municipal

liability can be premised upon inadequate police training.

*DeBellis v. Kulp*, 166 F.Supp.2d 255, 275 (E.D. Pa. 2001).

In order to recover, a plaintiff must show that the failure

to train amounted to deliberate indifference to the rights

of persons with whom the police had contact, and that the

municipality's policy caused a constitutional injury.  *Id.*

The Plaintiff believes that failure to train is a viable

claim, and requests leave to allege it at this premature

stage of proceedings.

The Defendants argue that the "Plaintiff has not

made any allegations that these Defendants knew of the
alleged wrongdoing and acquiesced" (Document No. 42-3, pp.
40-50).  To the extent necessary, this count can be amended
to make such allegation.

### X. Because There Was No Reasonable Cause for Arrest, the Defendants' Attack on the False Imprisonment Claim Fails.

The Defendants' attack on the Plaintiff's false
imprisonment claim suffers from the same core defect that
much of their Motion does:  The false premise that "there
was probable cause to arrest Plaintiff" (Document No. 42-3,
p. 50).  Because of this unassailable fact, the Defendants
cannot contest either element of a false imprisonment
claim.  As such, the Plaintiff's claim is adequately pled.

### XI. The Complaint Adequately Alleges Outrageous or Reckless Conduct Sufficient to Justify Punitive Damages.

The Defendants unconvincingly argue that the
"Plaintiff fails to plead sufficient facts to establish
that the Police Defendants had an evil motive" or "acted
with reckless indifference to" his rights (Document 42-6,
p. 50).  This argument can only be made if divorced from
the allegations of the Complaint itself, which make crystal
clear that the Defendants *minimally* acted with reckless
disregard to the Plaintiff's safety and rights.

For the sake of brevity, these allegations will not be detailed again, but, suffice it to say, they make a potential award of punitive damages not only possible but appropriate.

### XII. To the Extent Necessary, the Defendant's Motion Should Be Granted Without Prejudice to the Plaintiff's Right to Replead.

#### Law

In the typical case in which a defendant asserts the defense of failure to state a claim by motion, the plaintiff may amend the complaint once "as a matter of course" without leave of court. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

The Third Circuit has consistently held that when a plaintiff has filed a complaint under §1983 that is dismissable for lack of factual specificity, he should be given reasonable opportunity to cure the defect by amendment of the complaint, and denial of an application for leave to amend under such circumstances is an abuse of discretion. *Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985). Leave to amend need not even be requested. *District Council 47*, 795 F.2d 310, 316 (3rd Cir. 1986).

#### Application

Even if this Court determines that the Complaint has not "nudged" the Plaintiff's claims of "false arrest,

excessive force," and the like "across the line from conceivable to plausible[;]" the Court should only "grant the motion to dismiss" "without prejudice to the filing of an amended complaint . . . ." *Zampetis v. City of Atlantic City*, 2015 WL 9294668, 5 (D.N.J.).

Hence, to the extent necessary, the Plaintiff requests that the Court grant the Defendants' Motion only without prejudice to the Plaintiff's right to replead.

### Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss should be denied; or, alternatively, denied without prejudice to the Plaintiff's right to replead.

Law Offices of James C. DeZao, P.A.
Attorney of the Plaintiff(s)

Dated: 12|20|16

_____
JAMES C. DEZAO