**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL WIDMAIER,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF NEWARK, et al,<br><br>*Defendants.* | Civil Action No. 16-2533<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This matter comes before the Court by way of motions to dismiss filed by the City of Newark ("Newark") and Defendants Newark Police Chief Eugene Venable, Detective Silas Smith, Jr., Lieutenant John Rodrigues, Detective Rui Domingues, Sergeant Joseph Frost and Anthony Campos (the "Officer Defendants"). D.E. 42, 46. Plaintiff Michael Widmaier opposed both motions to which Defendants filed a single brief in reply. D.E. 47, 51, 53. The Court reviewed the submissions made in support and opposition to the motions, and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motions are **GRANTED in part and DENIED in part**.

## I.    FACTS AND PROCEDURAL HISTORY

      Plaintiff alleges that in the morning on July 21, 2015, he purchased breakfast, which was placed into a shopping bag, at an Exxon Station in Newark. Amended Compl. ("FAC") ¶¶ 15-17, D.E. 15. While returning to the nearby Riviera Hotel, where he was staying, Plaintiff ran into an acquaintance, Kadeem, and invited Kadeem to the Riviera. *Id.* ¶¶ 18-19. As they walked back to the hotel, a Jeep Cherokee and minivan approached them. *Id.* ¶ 20. The driver of the Jeep rolled

down his window and stated, "Drop the f***ing gun!" *Id.* ¶ 21.  The Plaintiff asked Kadeem if he

had a gun and Kadeem stated that "he did not know what the driver was talking about." *Id.* ¶ 22.

"Fearing for their safety and thinking that they were about to get accosted," Plaintiff and Kadeem

fled. *Id.* ¶ 23.

While running, the Plaintiff dropped the shopping bag with his breakfast. *Id.* ¶ 24.  Plaintiff

also heard the driver of the Jeep say, "I'm gonna kill you." *Id.* ¶ 25.  Plaintiff scaled multiple

fences and ran through parking lots to escape from the Jeep.  While fleeing, Plaintiff observed the

Jeep drive the wrong way down a one-way street and over grass during its pursuit of Plaintiff. *Id.*

¶¶ 26-28.  Eventually, as Plaintiff was running towards an opening in a fence, the Jeep accelerated

towards him at an angle "attempting to block his exit." *Id.* ¶ 29.  Plaintiff raised his hands in an

attempt to brace himself and "the Jeep struck him, knocked him to the ground on his back and

dragg[ed] him while driving over his leg" before coming to a stop over Plaintiff. *Id.* ¶¶ 30-31.

The driver opened the door, looked down, and saw the Plaintiff under the vehicle.  The driver then

put the Jeep in reverse and drove backward over the Plaintiff's torso with the left front tire, coming

to a stop several feet from Plaintiff. *Id.* ¶¶ 32-34.  The driver, later identified as Detective Silas

Smith Jr., exited the Jeep and began yelling, "Where's the f***ing gun?" *Id.* ¶ 35.

Plaintiff told Smith that he did not have a gun and asked for help, to which Smith responded

that Plaintiff would get help when he told Smith the location of the gun. *Id.* ¶ 36-37.  Plaintiff

continued to ask Smith for help to no avail, explaining that he did not have a gun. *Id.* ¶¶ 38-43.

Eventually, the minivan arrived.  An unidentified white male exited the car and spoke with Smith.

*Id.* ¶ 44.  Plaintiff also asked this man for assistance, but he did not offer any help.  The unidentified

man eventually got back into the minivan and left the scene. *Id.* ¶¶ 45, 49.

At some point, an ambulance arrived, and Smith told the rescue workers that Plaintiff was

robbing drug dealers with a gun and ran into the Jeep while trying to flee. *Id.* ¶ 50. Plaintiff attempted to lift his leg off the ground but could not do so due to multiple severe fractures. Smith refused to help the medics. *Id.* ¶¶ 51-52. At the hospital, Smith insisted to the attending physician that Plaintiff ran into the Jeep while fleeing. *Id.* ¶ 55. The attending physician noted that it appeared from Plaintiff's injuries and marks that Plaintiff was run over by a vehicle. *Id.* ¶ 56. Smith departed the hospital and did not return. *Id.* Plaintiff was under police guard at the hospital from his admittance until his release, and underwent four surgeries during his stay. *Id.* ¶¶ 57, 60.

Plaintiff was not informed that he was charged with any offense until receiving a notice to appear from the Newark Municipal Court. *Id.* ¶ 61. Plaintiff's legal counsel then obtained copies of the arrest and incident reports, which indicated that he was charged with wandering to obtain a controlled dangerous substance ("CDS") and resisting arrest. The report stated that Plaintiff was seen ingesting a suspected CDS orally and admitted to purchasing a bundle, or ten bags, of heroin. *Id.* ¶ 62. The charges, however, were subsequently dropped prior to the municipal court trial without notice to Plaintiff's attorney. *Id.* ¶ 65.

Plaintiff filed his initial complaint on May 5, 2016, and filed the FAC on July 25, 2016.[1] D.E. 15. In the FAC, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, for excessive force, wrongful arrest and *Monell* liability; assault and battery; violations of the New Jersey Constitution; gross negligence and negligence; intentional infliction of emotional distress; respondeat superior liability; and false imprisonment. Plaintiff sued the City of Newark, the Newark Police

---

[1] Plaintiff filed a Second Amended Complaint three days later, D.E. 16, that contained an additional count for failure to intervene as to the unidentified white male driving the minivan. Defendants' motions address and reference the FAC, D.E. 15. Since the Court is dismissing certain counts without prejudice, Plaintiff may reassert the failure to intervene claim in his next amended complaint. Of note, Plaintiff captioned his Second Amended Complaint as his Third Amended Complaint.

Department, and a number of individual police officers.[2]  Plaintiff also asserts claims against

unidentified John Doe Officers.  FAC ¶¶ 6-14.  The City of Newark and the Officer Defendants

filed separate motions to dismiss; both motions seek dismissal of all counts of the FAC pursuant

to Federal Rule of Civil Procedure 12(b)(6).[3]  D.E. 42, 46.

## II.    LEGAL STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual

matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege

sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of

a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are

legal conclusions, and therefore, not entitled to a presumption of truth.  *Burtch v. Milberg Factors,*

*Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's

well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.

## III.    ANALYSIS

### 1.  CLAIMS AGAINST THE CITY

---

[2] The FAC also asserted claims against Essex County, but the County was dismissed as a party via
stipulation on August 16, 2016.  D.E. 29.

[3] Newark's brief in support of its motion [D.E. 42-3] will be referred to Newark Br. and Plaintiff's
brief in opposition will be referred to as Newark Opp. Br. [D.E. 47].  The Officer Defendants'
brief in support of its motion [D.E. 46-2] will be referred to as Officers' Br.

### a.    Claims Against the Newark Police Department

At the outset, Newark argues that Plaintiff's claims against the Newark Police Department must be dismissed because a city and its police departments cannot be sued separately. Newark Br. at 11. Although Plaintiff does not address this issue, the Court agrees with Newark. Consequently, the claims against the Newark Police Department are dismissed with prejudice. *See Godley v. Newark Police Dep't*, No. 05-806, 2007 WL 269815, at *3 (D.N.J. Jan. 26, 2007) (dismissing Section 1983 and tort claims against the Newark Police Department because it was not an entity that was subject to suit).

### b.    Supervisory Liability Claims (Counts III and X)

Newark argues that Count III, a *Monell* liability claim,[4] must be dismissed because Plaintiff fails to identify a municipal policy or custom that led to Plaintiff's injuries. Newark Br. at 26. The Officer Defendants in a supervisory role join this argument. Officers' Br. at 26. Plaintiff contends that he should be given leave to amend this claim and have an opportunity to take limited discovery so that he can ascertain "the needed details to allege such claim." Newark Opp. Br. at 12.

A municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 690-91). Rather, to hold a municipality liable, a plaintiff must demonstrate that the violation of rights was caused by a municipal policy or custom. *Id.* To sufficiently state a claim based on a municipal policy or custom, a plaintiff must identify a policy or custom that "violates the Constitution or . . . while not unconstitutional itself, is the moving

---

[4] In *Monell v. Dep't Soc. Servs. of City of N.Y.* "the Supreme Court established that municipalities and other government entities were 'persons' subject to liability under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (citing *Monell*, 436 U.S. 658, 690-92 (1978)).

force behind the constitutional tort of one of its employees." *Id.* (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991)). Moreover, if a plaintiff relies on a policy or custom that does not violate federal law on its face, "causation can only be established by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequence.'" *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

Here, the FAC does not cite to any policy or custom. Instead, the FAC speaks only of "an intended plan of action," failing to provide any further details as to what this plan entailed or how it impacted Plaintiff. FAC ¶¶ 80-81. Threadbare recitations of the elements of a *Monell* claim, such as this, are insufficient. As a result, the claim is dismissed. *See, e.g.*, *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing claim against city because plaintiff failed to plead facts demonstrating the existence of a policy or custom).

In addition, Newark and the Individual Defendant who are sued based on their supervisory role contend that Plaintiff's supervisory liability claim against them must also be dismissed because Plaintiff fails to plead that that they knew of the alleged wrongdoing and acquiesced. Newark Br. at 36-37; Officers' Br. at 38-39. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Factual allegations that suggest "personal direction or of actual knowledge and acquiescence" are sufficient to establish the necessary involvement for a supervisory liability claim. *Id.* Plaintiff admits that, as pled, the supervisory liability claim is insufficient but requests leave to re-plead. Newark Opp. Br. at 19. As a result, this Count is dismissed as to Newark, Venable, Campos, Rodrigues, and Fester but the Court grants Plaintiff's request for leave to amend.

    **c.**    **Civil Conspiracy**

6

Plaintiff also appears to assert claims alleging a civil conspiracy pursuant to 42 U.S.C. Sections 1985 and 1986. FAC ¶¶ 80-84. To sufficiently plead a Section 1985(3) claim, a plaintiff must establish:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen.

*McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014). Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Falat v. County of Hunterdon*, No. 12-6804, 2014 WL 6611493, at *13 (D.N.J. Nov. 21, 2014) ("The conspiracy must be directed at the plaintiff because he belongs to a given class."). In addition, a claim for conspiracy "must contain supportive factual allegations." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009). Mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002). Finally, "[a] plaintiff must establish a valid [Section] 1985 claim in order to state a claim under [Section] 1986." *Carrington v. City of Jersey City*, No. 06-5367, 2008 WL 2061147, at *7 (D.N.J. May 12, 2008).

Here, to the extent Plaintiff even pleads a conspiracy claim, he fails to support it with any factual allegations. The FAC merely states in conclusory fashion that "Defendants knew that their intended plan of action violated [Section 1985]," had the power to change their plan, and that the plan damaged Plaintiff. FAC ¶¶ 80-84. Plaintiff does not address any of the necessary elements of a Section 1985 conspiracy and the FAC is devoid of facts suggesting that the events at issue were motivated by a racial animus. Therefore, Plaintiff's conspiracy claim is dismissed.[5]

---

[5] Plaintiff also refers to Section 1986 in the FAC although it is not clear if he intends to plead a Section 1986 claim. To state a claim under Section 1986 a plaintiff must establish that the

## 2.  CLAIMS AGAINST THE OFFICER DEFENDANTS

Plaintiff asserts claims against a number of Newark Police Officers in their official and individual capacities, in addition to at least two unidentified John Doe officers.  FAC ¶¶ 8-14.  The Officer Defendants argue that the FAC fails to attribute specific facts to each officer and "does not fairly apprise them of the claims against them."  Officers' Br. at 12.  They argue that the FAC should therefore be dismissed in its entirety.  *Id.*  When asserting a Section 1983 claim, a plaintiff must plead facts setting forth each defendant's personal involvement in the alleged violations.  *See Iqbal*, 556 U.S. at 676; *see also Rode*, 845 F.2d at 1207-08 (affirming dismissal of First Amendment retaliation claim where plaintiff failed to allege personal direction of or knowledge and acquiescence in retaliatory actions by individual defendants).  Here, Plaintiff pleads specific facts as to just one Defendant, Detective Silas Smith, Jr., *see, e.g.*, FAC ¶ 35.  In fact, other than naming the other Individual Defendants in the caption and under the "Parties" section, the FAC contains no factual allegations regarding the conduct of any of the other Officer Defendants.  In addition, although the FAC attributes specific conduct to at least two unidentified police officers, it appears to the Court that these officers were not present when the wrongdoing allegedly occurred.  *See, e.g., id.* ¶ 44 (alleging that after Smith had already run over Plaintiff in the Jeep the minivan appeared and a white male exited the vehicle).[6]  Consequently, with the exception of

---

defendant (1) had actual knowledge of the Section 1985 conspiracy; (2) had the power to prevent or aid in preventing the commission; (3) neglected or refused to prevent the Section 1985 conspiracy; and (4) a wrongful act was committed.  *Carrington*, 2008 WL 2061147, at *7.  Because Plaintiff fails to adequately plead a claim for a Section 1985 conspiracy, any claim under Section 1986 necessarily fails.

[6] As discussed in note 1, *supra*, Plaintiff later filed another amended complaint which added a claim for failure to intervene against the unidentified driver of the minivan.  As also set forth in note 1, Plaintiff may reassert this claim, if he chooses, in his next amended complaint.  The Court notes, however, that as currently pled, the FAC merely indicates that Smith's actions of running over Plaintiff (twice) had already ended when the unidentified driver appeared on the scene.

Smith, every Officer Defendant, including the John Doe Defendants, are dismissed from this matter.

### 3. CLAIMS AS TO OFFICER SMITH

#### a. Excessive Force (Count I)

Count One pleads an excessive force claim pursuant to Section 1983. *Id.* ¶¶ 67-72. A Section 1983 excessive force claim based on the conduct of law enforcement during an arrest arises under the Fourth Amendment's protection against unreasonable seizure of the person. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). "Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Id.* at 634 (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3d Cir. 1988)). The use of force to effectuate an arrest must be reasonable. *Id.* (citing *Graham*, 490 U.S. at 396). The reasonableness of the officer's use of force, an objective inquiry, depends on the facts and circumstances of each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)).

In this instance, Plaintiff alleges that after Smith knocked Plaintiff to ground in the Jeep and drove over his leg, Smith opened the car door, looked at Plaintiff, put the Jeep in reverse, and drove over Plaintiff's torso. FAC ¶¶ 32-34. As plead, the facts suggest that Smith's conduct was

objectively unreasonable. Consequently, Plaintiff pleads sufficient facts to survive a motion to dismiss for his excessive force claim.[7]

The Officer Defendants also maintain that Plaintiff's excessive force claim should be dismissed because Smith is entitled to qualified immunity. Qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). Because qualified immunity protects government agents from suit, it "should be resolved as early as possible." *Id.* The inquiry into qualified immunity, however, is fact intensive. Therefore, it is "generally ill-suited for resolution at the pleadings stage." *Janowski v. City of North Wildwood*, No. 16-4464, 2017 WL 1821078, at *4 (D.N.J. May 5, 2017) (quoting *Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013)). "[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas*, 463 F.3d at 291 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir.

---

[7] The Officer Defendants argue that they can only be liable for excessive force if their conduct "shocks the conscience" because this case involves a police pursuit. Officers' Br. at 15-18. The shocks the conduct standard applies in "state created danger cases," which arise through a substantive due process violation of the Fourteenth Amendment. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). Plaintiff does not assert a substantive due process claim here. In addition, the Court is not aware of any reason why a Fourth Amendment excessive force claim cannot be asserted under these facts. *See, e.g.*, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020-22 (2014) (conducting a Fourth Amendment excessive force analysis in a high speed police chase case). And even if Plaintiff asserted a substantive due process claim, it would not be dismissed under the alleged facts. In state created danger cases where there is a "hyperpressurized environment," such as a police chase, "an intent to cause harm is usually required" to meet the shocks the conscience standard. *Sanford*, 456 F.3d at 309. As alleged here, the Complaint pleads facts demonstrating an intent to do harm. Even if the first time that Smith ran over Plaintiff did not qualify, certainly the second, allegedly intentional backing-up over of Plaintiff would. The Court is not finding that the initial collision does not qualify, but is merely pointing out that the intentional backing-up over Plaintiff puts the issue beyond doubt for purposes of the current motion.

2001)).

In determining whether qualified immunity exists, a court must assess whether (1) the facts alleged by plaintiff show the violation of a constitutional right; and (2) the plaintiff's constitutional right was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). As discussed, Smith violated a constitutional right when he backed over Plaintiff with his Jeep. Consequently, the Court will consider whether Plaintiff's constitutional right was clearly established at the time.

A right is clearly established if it would "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *see also Gaymon v. Esposito,* No. 11-4170, 2013 WL 4446973, at *5 (D.N.J. Aug. 16, 2013) ("[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Wilson,* 526 U.S. at 615)). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson,* 555 U.S. at 244 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Thomas,* 463 F.3d at 300 (quoting *Saucier,* 533 U.S. at 201). Thus, for a Fourth Amendment excessive force claim, a court must consider, under the totality of the circumstances present at the time, "whether an officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Gaymon,* 2013 WL 4446973, at *6 (quoting *Graham,* 490 U.S. at 395-97) (internal quotation marks omitted).

The facts present here, as alleged in the FAC at the motion to dismiss stage, indicate that Smith's actions were not objectively reasonable. Despite the fact that Smith already knocked

Plaintiff to the ground with his Jeep and drove over Plaintiff's leg,[8] Smith opened the car door and looked at Plaintiff, then put the Jeep in reverse and backed over Plaintiff's torso. As pled, it would be unreasonable for an objective officer to conclude that this conduct was lawful. Smith, therefore, is not entitled to qualified immunity for the excessive force claim and the Officer Defendants' motion to dismiss is denied for this count.

###        b.        Wrongful Arrest (Counts II and V)

Plaintiff asserts claims for wrongful arrest pursuant to Section 1983 and the New Jersey Constitution.[9]  FAC ¶¶ 73-78, 92-97.  The Officer Defendants argue that these claims must be dismissed because there was probable cause for the arrest. Officer Br. at 18-21.

"The proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman*, 47 F.3d at 634 (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). "Where the police lack probable cause to make an arrest, the arrestee has a claim under [Section] 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* at 636 (quoting *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)). The inquiry into wrongful arrest under the New Jersey Constitution is the same. *See, e.g.*, *Geissler v. City of Atlantic City*, 198 F. Supp. 3d

---

[8] As discussed in note 6, *supra*, the Court is not finding that Smith's initial collision with Plaintiff would be subject to qualified immunity.  The intentional backing over Plaintiff, however, is dispositive at the motion to dismiss stage.

[9] Although not raised by Defendants, civil claims for a violation of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act, which is interpreted analogously to Section 1983. *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013); *see also Roman v. City of Newark*, No. 16-1110, 2017 WL 436251, at *3-4 (D.N.J. Jan. 31, 2017) (analyzing state constitutional claims under Section 1983). Because Plaintiff will be provided with an opportunity to re-plead many of his claims, any amended complaint must plead the New Jersey Constitutional violations in conformance with the New Jersey Civil Rights Act.

389, 397 (D.N.J. 2016) ("Under *federal and New Jersey law*, a plaintiff states a claim for false imprisonment by demonstrating that (1) she was detained and (2) the detention was unlawful.") (emphasis added).

Probable cause exists if, at the time a suspect is arrested, "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). The determination of whether there was probable cause requires a "common sense approach" based on "the totality of the circumstances."[10] *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

Here, the Officer Defendants contend that Plaintiff was arrested and charged with wandering to obtain a CDS and resisting arrest. Officers' Br. at 20. An individual may be charged with wandering to obtain a CDS if "(1) he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance or controlled substance analog; and (2) engages in conduct that, under the circumstances, manifests a purpose to obtain or distribute a controlled dangerous substance or controlled substance analog." N.J.S.A. 2C:33-2.1(b). In this instance, the facts as alleged in the FAC do not demonstrate that Smith had probable cause to arrest Plaintiff for this offense. Plaintiff pleads that after purchasing breakfast at an Exxon Station, he was simply walking to a hotel with an acquaintance. FAC ¶¶ 17-20. There are no facts suggesting that Plaintiff was wandering, remaining in a public place, or otherwise demonstrating a purpose to obtain or distribute a CDS. Consequently, an ordinarily cautious

---

[10] Plaintiff here was not arrested pursuant to a warrant. The Court notes, however, that if a warrant existed, it would apply a different test to determine whether probable cause was present. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (setting out two part test to determine to validity of a warrant).

person would not observe Plaintiff's conduct and reach the conclusion that he was attempting to buy or sell a CDS. Therefore, Smith did not have probable cause to arrest Plaintiff for wandering to obtain a CDS.

The Officer Defendants further argue that probable cause existed for Plaintiff's arrest because Plaintiff resisted arrest and eluded the officers. Officers' Br. at 21. "[A] person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest . . . [and] a person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2. However, resisting arrest cannot be an independent basis showing probable cause for an arrest. *Groman*, 47 F.2d at 635; *see also Brown v. Makofka*, 644 F. App'x. 139, 143 (3d. Cir. 2016) ("But the District Court incorrectly justified the arrest by citing the resistance to that arrest"). Moreover, although Plaintiff ran from the Jeep, he alleges that he did so because he feared for his safety after Smith yelled "Drop the f*** gun" and later, "I'm gonna kill you." FAC ¶¶ 21, 23, 25. Smith was not driving a patrol car and there is no indication that he identified himself as a police officer before Plaintiff fled. As alleged, these facts do not demonstrate that Plaintiff ran from the Jeep to avoid arrest. Because Smith did not have probable cause to arrest Plaintiff, the Officer Defendants' motion to dismiss as to the New Jersey Constitutional claim is denied.

The Officer Defendants argue that Smith is entitled to qualified immunity for the Section 1983 false arrest claim. Officers' Br. at 24-25. As discussed, Smith violated a constitutional right by arresting Plaintiff without probable cause. Accordingly, the Court will turn to the second prong of the qualified immunity inquiry: whether Smith violated a clearly established constitutional right.

A defendant is entitled to qualified immunity for a Section 1983 false arrest claim "unless

14

it would have been clear to a reasonable officer there was no probable cause to arrest." *Frohner v. City of Wildwood*, No. 07-1174, 2008 WL 5102460, at *6 (D.N.J. Dec. 1, 2008) (quoting *Giles v. Davis*, 427 F.3d 197, 205 (3d Cir. 2005)). Moreover, this question must be considered within the context of the specific facts of the case. *Thomas*, 463 F.3d at 300 (quoting *Saucier,* 533 U.S. at 201). As such, the proper inquiry is whether a reasonable officer in Smith's shoes would have understood that he did not have probable cause to arrest Plaintiff. *Janowski*, 2017 WL 1821078, at *6 ("Courts must instead objectively assess whether, at the time of the arrest and <u>based upon the</u> <u>facts known to the officer</u>, probable cause existed 'as to any offense that could be charged under the circumstances.'" (quoting *Wright*, 409 F.3d at 606)). The FAC fails to demonstrate that there was probable cause for Plaintiff's arrest, as the facts suggest that Plaintiff was simply walking from one location to another. Thus, the FAC is devoid of facts upon which a reasonable police officer could conclude that Plaintiff was committing any criminal offense at the time. Consequently, Smith is not entitled to qualified immunity for the false arrest claim. The Officer Defendants' motion for dismiss for the Section 1983 false arrest claim, therefore, is denied.

### c.    Unreasonable Seizure (Count VI)

Plaintiff also asserts a claim for unreasonable seizure pursuant to Article I, Section 7 of the New Jersey Constitution. FAC ¶¶ 98-103. The Officer Defendants argue that there is no unreasonable seizure because there was probable cause for the arrest. Officers' Br. at 31–32. Probable cause is the constitutionally imposed standard to determine whether a seizure is lawful under the New Jersey Constitution. *State v. Novembrino*, 105 N.J. 95, 105 (1987). As discussed, the alleged facts demonstrate that Smith did not have probable cause to search or arrest Plaintiff. Therefore, Plaintiff states a claim for unreasonable seizure and the Officer Defendants' motion is denied as to Count VI.

### d.    Tort Claims

### 1.    The New Jersey Tort Claims Act

The Officer Defendants argue they are entitled to absolute immunity for Plaintiff's tort claims pursuant to the New Jersey Tort Claims Act ("NJTCA"). Officers' Br. at 33-37. A party that asserts a tort claim seeking damages from a public entity or employee must comply with the NJTCA. Under the NJTCA, public employees are not liable for injuries caused by "a person resisting . . . or evading arrest" or "resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5–2. Pursuit immunity under the NJTCA, however, does not exonerate public employees if their conduct "constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3–14(a); *see also Tice v. Cramer*, 133 N.J. 347, 367 (1993) ("[t]he immunities provided for . . . appear to be absolute except in the event of willful misconduct on the part of a public employee").

Willful misconduct, "is not immutably defined but takes its meaning from the context and purpose of its use." *Fielder v. Stonack*, 141 N.J. 101, 124 (1995). It falls somewhere "between simple negligence and the intentional infliction of harm." *Id.* (quoting *Foldi v. Jeffries*, 461 A.2d 1145 (1983). While willful misconduct "need not involve the actual intent to cause harm, there must be some knowledge that the act is wrongful." *Id.* (internal citation omitted). Moreover,

> [I]n order to satisfy the requirement of willfulness or wantonness there must be a "positive element of conscious wrongdoing." Our cases indicate that the requirement may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.

*Id.* (quoting *Berg v. Reaction Motors Division, Thiokol Chem. Corp.*, 37 N.J. 396, 414 (1962)).

In *Fielder*, the court set forth a definition of willful misconduct that specifically applied to police pursuits. In such a case, the court determined that "willful misconduct is ordinarily limited

to a knowing violation of a specific command by a superior, or a standing order that would subject that officer to discipline." *Id.* at 125. The Officer Defendants argue that this definition should control here. The Officer Defendants further argue that the tort claims must be dismissed because no officer's actions evidenced willful misconduct or that they were acting contrary to any standing order or lawful command. Officers' Br. at 36-37.

Although Plaintiff does not plead that any officer violated a command or standing order, the FAC pleads sufficient facts to demonstrate that Smith may still have acted with willful misconduct. First, in *Fielder*, the Court explicitly stated that the definition of willful misconduct is fluid and recognized that the requirement for a standing order or specific command *ordinarily*, but not always, must occur. *Fielder*, 168 N.J. at 125; *see also Alston v. City of Camden*, 168 N.J. 170, 183-85 (2001) (affirming willful misconduct jury instruction in case involving a police chase that was not limited to whether an order was disobeyed). Thus, Plaintiff's failure to plead that Smith violated an order or command is not fatal to his tort claims. Here, the FAC pleads enough facts to establish that Smith acted with "a high degree of probability of harm and reckless indifference to the consequences." *Fielder*, 168 N.J. at 124. Specifically, the FAC pleads that Smith "saw the Plaintiff was located under the vehicle, then reversed the vehicle and drove backward . . . directly over the Plaintiff's torso . . . ." FAC ¶¶ 32–34. Smith, therefore, is not entitled to pursuit immunity under the NJTCA.

### 2. Negligence and Gross Negligence (Counts VII and VIII)

The Officer Defendants argue that Counts VII and VIII, claims for gross negligence and negligence respectively, should be dismissed because Defendants "did not owe, violate or breach any duty to Plaintiff." Officers' Br. at 33. Police officers have "a duty to act reasonably, and, in the context of effectuating an arrest, they have a duty to exercise 'reasonable care to preserve the

17

life, health, and safety of the person in custody.'" *Roccisano v. Township of Franklin*, No. 11–6558, 2013 WL 3654101, at *11 (D.N.J. Jul. 12, 2013) (quoting *Del Tufo v. Township of Old Bridge*, 147 N.J. 90, 101 (1996)); *see also Damiani v. West Deptford Township*, No. 07-2884, 2008 WL 656041, at *3-4 (D.N.J. Mar. 7, 2008) (refusing to dismiss a negligence claim where plaintiff alleged that officers physically pulled her from a car without cause or explanation). As alleged, the facts demonstrate that Smith breached his duty of care when he backed over Plaintiff. Consequently, the Officer Defendants' motion to dismiss these counts is denied.[11]

### 3.    Intentional Infliction of Emotional Distress (Count IX)

The Officer Defendants argue that the intentional infliction of emotional distress claim must be dismissed because Plaintiff fails to identify extreme or outrageous conduct committed by any of the Defendants. Officers' Br. at 37-38. To establish a claim for intentional infliction of emotional distress, a plaintiff must plead four elements: (1) defendants acted intentionally or recklessly; (2) defendant's conduct was so outrageous to go beyond all bounds of decency and be utterly intolerable in a civilized community; (3) proximate cause; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it. *Shuman v. Raritan Township*, No. 14-3658, 2016 WL 7013465, at *26 (D.N.J. Nov. 30, 2016) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 532 (D.N.J. 2008)). As addressed at length above, the FAC pleads facts suggesting that in backing over Plaintiff after he was already knocked to the ground by the Jeep, Smith's conduct may constitute willful misconduct. This is sufficient to also establish extreme or outrageous conduct necessary to withstand a motion to dismiss for this count. Therefore, the

---

[11] The Officer Defendants only argument for dismissal of Plaintiff's negligence and gross negligence claims is the lack of a legal duty. But as discussed, to support a tort claim under the NJTCA Plaintiff must establish willful misconduct, which is more than negligence or gross negligence. *See Alston*, 168 N.J. at 184-85. Because Plaintiff will be provided with an opportunity to file an amended pleading, any amended pleading should reflect this standard.

Officer Defendants' motion to dismiss is denied as to this claim.

### 4. False Imprisonment (Count XI)

False imprisonment has two elements: (1) "'an arrest or detention of the person against his or her will' and (2) 'lack of proper legal authority or legal justification.'" *Houck v. Ferrari*, 57 F. Supp. 3d 377, 382 (D.N.J. 2014) (quoting *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 590 (2009)). As discussed, Smith did not have probable cause to make an arrest and thus lacked the proper legal justification to detain Plaintiff. Therefore, Plaintiff states a claim for false imprisonment. Accordingly, the Officer Defendants' motion is denied as to the false imprisonment claim.

### e. Punitive Damages

While Plaintiff concedes that he is unable to recover punitive damages from Newark,[12] he does not make the same concession as to the Officer Defendants. To recover punitive damages for a Section 1983 claim against an individual, the defendant's conduct must be "motivated by evil motive or intent, or . . . involve[] reckless or callous indifference to the federally protected rights of others." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d. Cir. 1989) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). At this stage, the allegations in Plaintiff's FAC sufficiently plead reckless or callous indifference such that the claim for punitive damages under Section 1983 will not be dismissed.

As for the state law tort claims, "individual officers may be liable for punitive damages in their individual capacity . . . ." *Drake v. Andruczyk*, No. 08–4249, 2011 WL 1402158, at *8 (D.N.J.

---

[12] Newark argued that Plaintiff cannot recover punitive damages from the City for his tort claims, due to the NJTCA, or for the Section 1983 claims. Newark Br. at 38. Although all the claims against Newark are dismissed, the Court notes that municipalities are immune from punitive damages under Section 1983 and the NJTCA. *Damiani*, 2008 WL 656041, at *4.

Apr. 13, 2011) (citing *Ramirez v. United States*, 998 F. Supp. 425, 438 (D.N.J. 1998)).  Pursuant to the NJTCA, punitive damages are appropriate if the "acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions."  N.J.S.A. 2A:15-5.12(a).  The Court already determined that the FAC sufficiently pleads facts demonstrating willful misconduct as to Smith.  Therefore, Defendants' motion to dismiss the punitive damages claims arising under the tort claims is denied. Whether an individual officer can be liable for punitive damages for state constitutional claims does not appear to have been addressed by a court in this district.  *See, e.g.*, *May v. Sanna*, No. 09-3253, 2012 WL 1067686, at *14 n.20 (D.N.J. Mar. 29, 2012).  Because this issue was not addressed by the parties the Court will allow the punitive damages claim as to Smith to remain at this time.

## IV.    CONCLUSION

For the reasons set forth above, the City of Newark's motion to dismiss [D.E. 42] is **GRANTED** and the Newark Police Department is dismissed from this matter with prejudice.  The Officer Defendants' motion to dismiss [D.E. 46] is **GRANTED in part and DENIED in part**. The FAC is dismissed as to every Defendant except for Smith.  These Defendants, including the City of Newark, however, are dismissed without prejudice to allow Plaintiff an opportunity to file an amended complaint.  Plaintiff has thirty (30) days to file an amended complaint if he so chooses, consistent with this Opinion and in accordance with Local Civil Rule 15.1.[13]    Moreover, the

---

[13] Effective May 10, 2017, Local Civil Rule 15.1 states, in part, that:

> A party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:
>
> (1) a copy of the amended pleading, complete with a handwritten or electronic signature; and

Officer Defendants' motion to dismiss, to the extent that it seeks dismissal of specific counts as to

Defendant Smith, is **DENIED**.  An appropriate Order accompanies this Opinion.

Dated:        July 14, 2017

                                        _____
                                        John Michael Vazquez, U.S.D.J.

_____

a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.