# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY F. WIDMAIER AND VINCENT A. WIDMAIER, individually and as administrator ad prosequendum for the estate of MICHAEL WIDMAIER,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF NEWARK, et al,<br><br>*Defendants*. | Civil Action No. 16-2533<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of the motion to dismiss filed by the City of Newark ("Newark" or the "City"); former Newark Police Chief Eugene Venable; Detective Silas Smith, Jr.; Lieutenant John Rodrigues; Detective Rui Domingues; Sergeant Joseph Frost; and Anthony Campos. D.E. 73. Plaintiff is now deceased. As a result, Nancy F. Widmaier and Vincent A. Widmaier ("Plaintiffs") are now Plaintiffs as *administrators ad prosequendum* of Michael Widmaier's estate. Plaintiffs oppose the motion. D.E. 76. The Court reviewed the submissions made in support and opposition to the motion and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[1] For the reasons that follow, Defendants' motion is **GRANTED in part and DENIED in part**.

---

[1] The Defendants' brief in support of their motion to dismiss, D.E. 73-2, will be referred to as "Defs. Br." and Plaintiffs' memorandum in opposition, D.E. 76, will be referred to as "Plfs. Opp.".

## I. INTRODUCTION

The Court previously discussed at length in deciding a prior motion to dismiss. D.E. 54. As a brief overview, Plaintiffs allege that on July 21, 2015, after Michael Widmaier fled from a Jeep on foot, the driver of the Jeep caught up with him, struck him with the Jeep, knocked him to the ground, and drove directly over his leg before coming to a stop. Fifth Am. Compl. ("FAC") ¶¶ 21-36. The driver opened the door, looked down and saw Widmaier under the car, then put the car in reverse and drove over his torso. *Id.* ¶¶ 36-39. The driver of the Jeep was later identified as Defendant Newark Police Detective Silas Smith. *Id.* ¶ 40. Plaintiffs assert Section 1983, New Jersey constitutional, and tort law claims against multiple Newark police officers, the City of Newark, and the Newark Police department because this alleged wrongful conduct.

On June 14, 2017, this Court dismissed every Defendant in this matter except for Defendant Silas Smith, Jr. for failure to state a claim. D.E. 54, 55. The claims against the Newark Police Department were dismissed with prejudice. Widmaier, however, was provided with an opportunity to file an amended pleading to reassert claims against the other Defendants. *Id.* On September 25, 2017, Nancy F. Widmaier and Vincent A. Widmaier filed a Fourth Amended Complaint as *administrator ad prosequendum* for the estate of Michael Widmaier because Widmaier passed away. D.E. 61. Defendants filed a motion to dismiss, and Plaintiffs filed a cross-motion for leave to file a Fifth Amended Complaint. On May 17, 2018, Plaintiffs' cross-motion was granted and Defendants' motion to dismiss was denied without prejudice. D.E. 67. As a result, Plaintiffs filed the FAC.

As will be discussed in detail below, the FAC includes a number of new factual allegations regarding the July 21 incident as to Plaintiffs' claims against the City and supervisors within the Newark Police Department. D.E. 72. Defendants subsequently filed the instant motion to dismiss

pursuant to Rule 12(b)(6) seeking to dismiss the FAC in its entirety except as to the claims asserted against Defendant Smith.[2] D.E. 73.

## II. **LEGAL STANDARD**

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

Much of Plaintiffs' opposition to this motion is premised on a belief that discovery will uncover proof of their claims. *See, e.g.*, Plfs. Opp. at 29-30. In so doing, Plaintiffs appear to be arguing that this Court should apply the notice pleading standard as derived from *Conley v. Gibson*, 355 U.S. 41 (1957). Since *Twombly* and *Iqbal*, however, the notice pleading standard is no longer

---

[2] Although Defendant Smith is included amongst the moving Defendants, Defendants clarify in their brief that they are not actually seeking to dismiss any claims asserted against him. Defs. Br. at 1. As discussed, the Court denied the first motion to dismiss as to Smith and nothing in the FAC changes the claims asserted against him. As a result, the Court considers this motion to dismiss only as to the City, Venable, Rodrigues, Domingues, Frost and Campos. As a result, the reference to Defendants in this Opinion does not include Smith.

3

in effect in federal court. Rather, claims must be supported by sufficient factual allegations from the outset. *See Twombly*, 550 U.S. at 555, *Iqbal*, 556 U.S. at 678. Thus, the Court rejects Plaintiffs' argument that certain claims should survive this motion to dismiss solely based on the assumption that discovery will reveal the necessary factual support.

III. **ANALYSIS**

1. **CLAIMS AGAINST THE CITY[3] AND THE SUPERVISORY DEFENDANTS**

    a. ***Monell* Claim (Count III)**

Defendants argue that Count III, a *Monell* liability claim,[4] must be dismissed because Plaintiffs fail to identify a municipal policy or custom that led to Widmaier's injuries. Defs. Br. at 21/25. A municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978)). Rather, to hold a

---

[3] Defendants argue that Plaintiffs' claims against the Newark Police Department must be dismissed because a city and its police departments cannot be sued separately, and because the claims against the Newark Police Department were dismissed with prejudice. Defs. Br. at 14-15. Plaintiffs state that they are no longer asserting claims against the Police Department. Plfs. Opp. at 1. Accordingly, Defendants' motion to dismiss to the extent it seeks dismissal of the Newark Police Department is denied as moot. The police department has already been dismissed with prejudice. Plaintiff's counsel should have rectified this issue before filing the FAC.
   Defendants also maintain that to the extent Plaintiffs seek to assert conspiracy claims pursuant to 42 U.S.C. § 1985 and § 1986, these claims must be dismissed because Plaintiffs fail to plead facts demonstrating that a conspiracy existed, or Defendants' actions were motivated by a racial animus. Defs. Br. at 27-29. In their opposition, Plaintiffs state that the FAC does not mention Section 1985 or 1986. Plfs. Opp. at 24. Accordingly, the Court does not construe the FAC as asserting any conspiracy claims and Defendants' motion to dismiss as to any conspiracy claims is denied as moot.

[4] In *Monell v. Dep't Soc. Servs. of N.Y.C.* "the Supreme Court established that municipalities and other government entities were 'persons' subject to liability under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (citing *Monell*, 436 U.S. 658, 690-92 (1978)).

municipality liable, a plaintiff must demonstrate that the violation of rights was caused by a municipal policy or custom. *Id.* In addition, the Third Circuit recently clarified that a *Monell* claim may also be premised on a municipality's failure to train. For a failure to train claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). For claims involving police officers, a failure to train can only serve as a basis for Section 1983 liability where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

In *Roman*, the plaintiff's *Monell* claim alleged that Newark was liable, with respect to police searches, because it failed to train police officers and engaged in a pattern or practice of constitutional violations. *Id.* at 797. The plaintiff's claims were based in part on a consent decree between the Department of Justice and the City of Newark that pertained to police misconduct. *Id.* at 799. The Third Circuit determined that the plaintiff adequately pled failure to train and unconstitutional custom *Monell* claims. The court determined that the plaintiff's allegations as to an improper search of his apartment, coupled with the consent decree, which addressed similar police misconduct, provided sufficient factual support to survive a motion to dismiss. *Id.* at 799-801. Although the consent decree was not in place when the events giving rise to Roman's claims occurred, the court determined that it "may fairly infer that the problems that led to [the consent

5

decree] were occurring during the time of [Roman's] allegations and for some time before that." *Id.* at 799. Consequently, the Third Circuit determined that the consent decree "fortifie[d]" the plaintiff's *Monell* claims "because it acknowledges a pattern or practice of conduct by the Newark Police Department that deprives individuals of rights, privileges, and immunities secured by the Constitution." *Id.* (internal quotation omitted). Finally, the Third Circuit determined that these violations were widespread and causally linked to the plaintiff's allegations because the Police Department was aware of complaints but rarely acted upon them. *Id.*

Plaintiffs' *Monell* allegation resembles the claim in *Roman*. Plaintiffs' claim is premised on Newark's custom of failing to adequately train its police officers as to the use of force and pedestrian stops. Specifically, Plaintiffs allege that Newark failed to adopt policies and training programs to ensure that the Newark Police Department and its officers complied with state and federal law as well as the Constitutional rights of individuals in custody or being pursued by Newark police officers. FAC ¶ 113. Further, Plaintiffs allege that Newark failed to train its police officers as to the use of excessive force, or to take actions to prevent injury and death due to the use of excessive force. *Id.* ¶ 115. While not as clear, Plaintiffs also appear to allege that there was a custom within the Newark Police Department of unconstitutional and discriminatory behavior surrounding arrests and the use of force. *Id.* ¶ 147.

Like *Roman*, Plaintiffs' *Monell* claim relies heavily on a July 22, 2014 Department of Justice, Civil Rights Division Investigative Report of the Newark Police Department (the "DOJ Report") and the resulting Consent Decree. To that end, the FAC asserts new factual allegations regarding the DOJ Report. *See* FAC ¶ 117. Defendants respond that Plaintiffs cannot rely on the DOJ Report. Defendants maintain that because Newark entered into a consent decree to correct the deficiencies outlined in the DOJ Report, the Report is settlement material. Defs. Br. at 25.

6

Defendants provide no legal support for this argument, and the Court is not aware of any reason why it cannot consider Plaintiffs' factual allegations that address the DOJ Report. *Cf. Roman*, 914 F.3d at 796 (stating that court could consider undisputedly authentic settlement material that plaintiff's claims were based upon). Accordingly, the Court will consider Plaintiffs' allegations that pertain to the DOJ Report.

Pertinent to Plaintiffs' claims, the DOJ Report found reasonable cause to believe that approximately 75% of reported pedestrian stops by the Newark Police Department violated the Fourth Amendment, and that unjustified and excessive force occurred in more than 20% of the incidents reviewed. FAC ¶¶ 119, 122. Moreover, during the review period, Newark police officers "made thousands of stops of individuals described as milling, loitering, or wandering, without any indication of reasonable criminal activity." *Id.* ¶ 120. Plaintiffs allege that the DOJ report "concluded that at least part of the pattern of unlawful stops could be traced to Police Department training and policies." *Id.* ¶ 129. In addition, Newark Police Officers are required to complete a "Field Inquiry Report," which among other things, documents the legal support for the stop. But the DOJ Report found that the Police Department's use of such reports was not consistent with its policy. *Id.* ¶¶ 124-26.

The DOJ Report also found reasonable cause to believe that the Police Department engaged in a pattern or practice of unconstitutional use of force. The DOJ Report stated that the Police Department failed to refer serious use of force cases to the Essex County Prosecutor's Office for review, that it did not hold police officers accountable for failing to document the use of force, and that this inadequate supervision contributed to the pattern of Constitutional violations. *Id.* ¶¶ 132-36. Finally, Plaintiffs contend that the City, Campos, Domingues, Frost and Venable knew of and helped to continue the customs and practices documented in the DOJ Report, and that these policies

proximately caused Widmaier's injuries. *Id.* ¶¶149-64.

The FAC adequately asserts a *Monell* claim. As discussed in the prior Opinion, Plaintiffs sufficiently alleged that Smith attempted to stop Widmaier without any indication that criminal activity was occurring, and that Smith used unlawful and unreasonable force on Widmaier after Widmaier had already been knocked to the ground by Smith's Jeep. In addition, Plaintiffs alleged that Defendants failed to correctly document the incident and failed to take proper disciplinary action with respect to Smith. Opinion at 9-15. The FAC asserts additional allegations that neither a use of force or field inquiry report were completed after the incident, and that there was no internal investigation. FAC ¶¶ 150-55. Like *Roman*, the wrongdoing doing set forth in the DOJ Report covers the same type of wrongful conduct that Plaintiffs allege occurred here. Thus, the Court can infer that the alleged Constitutional violations surrounding Widmaier's arrest had been occurring within the Newark Police Department for some time, were widespread within the Police Department, and were causally linked to Widmaier's injuries. *See Roman*, 914 F.3d at 799. Consequently, Plaintiffs plead a failure to train and municipal custom claim as to Newark. Defendants' motion to dismiss is denied on these grounds.

Plaintiffs appear to assert their *Monell* claim against all Defendants. *Monell* liability, however, pertains to government entities not individuals. *See Monell*, 436 U.S. at 690-95 (explaining that local governing units are subject to Section 1983 liability); *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). As a result, Count Three is dismissed as to the remaining Defendants.

### b. Supervisory Liability (County X)

Defendants also contend that Plaintiffs' supervisory liability claim against the City, Frost, Rodrigues, Venable, and Campos must be dismissed because Plaintiffs fail to plead that these

Defendants were personally involved in the alleged wrongdoing. Defs. Br. at 35-36. As discussed, a municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas*, 749 F.3d at 222 (citing *Monell*, 436 U.S. at 690-91). Accordingly, Count X is dismissed as to the City.

There are two cognizable theories of supervisory liability for Section 1983 claims. First, factual allegations that suggest "personal direction or of actual knowledge and acquiescence" may be sufficient to establish the necessary involvement for a supervisory liability claim. *Id.* At least prior to *Iqbal*,[5] a plaintiff asserting such a supervisory liability claim must (1) identify a specific supervisory practice that the defendant failed to employ; (2) "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incident"; and (3) "circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *Janowski v. Lellock*, 649 F. App'x 184, 187 (3d Cir. 2016) (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)). The second theory of liability may be asserted against policymakers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused the constitutional harm.'" *A.M. ex rel J.M.K. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Here, Plaintiffs allege that Frost was Smith's immediate supervisor. FAC ¶ 11. Plaintiffs allege that Widmaier was initially approached by a Jeep, which was driven by Frost, and a minivan. Smith rolled down the window of the Jeep, told Widmaier to "Drop the f***ing gun," and then

---

[5] The precise scope of a Section 1983 supervisory liability claim after *Iqbal* is not settled within the Third Circuit. *See Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 70 (3d Cir. 2011). This issue has not been addressed by the parties and is not vital to resolve the instant motion to dismiss.

9

proceeded to follow Widmaier as he fled from the Jeep. *Id.* ¶¶ 21, 24, 26-36. Although Plaintiffs do not allege that the minivan also followed Widmaier as he was fleeing, Plaintiffs allege that Frost exited from the driver's side of a minivan when he arrived on the scene as Widmaier lay on the ground. *Id.* ¶ 49. Accordingly, the Court can infer that Frost had contemporaneous knowledge of the alleged wrongful arrest. Moreover, Plaintiffs allege that Frost knew about the July 21 incident but failed to request an investigation, complete a field inquiry or use of force report, and failed to take any other action after the fact. *Id.* ¶¶ 75-79. These allegations are sufficient to sufficiently state a supervisory claim as to Frost, especially in light of Plaintiff's allegations with respect to the DOJ report. *See Janowski*, 649 F. App'x at 187 (stating that supervisory liability may exist if the supervisor "as the person in charge, had knowledge or and acquiesced in the unconstitutional conduct" (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586).

Plaintiffs also allege that Rodrigues was Smith's supervisor. *Id.* ¶ 98. Plaintiffs plead that Rodrigues knew or should have been aware that Plaintiff was hospitalized after the incident because of the staffing and overtime required to provide security at the hospital. Rodrigues, however, failed to notify his supervisors, failed to ensure that the appropriate reports were completed, and failed to investigation the incident. *Id.* ¶¶ 98-102. These allegations are also sufficient to establish a supervisory claim as to Rodrigues.

Although Plaintiffs do not plead facts demonstrating that Venable and Campos had knowledge of the incident or were otherwise personally involved, Plaintiffs assert a cognizable policy-maker theory of supervisory liability. Plaintiffs seemingly plead that Venable and Campos were policymakers in light of their positions. Venable was the Chief of Police and Campos is employed by the Police Department as the Agency Executive.[6] FAC ¶¶ 9, 12, 148. Moreover, as

---

[6] To be a policymaker for Section 1983 purposes, the defendant must be responsible for making

10

discussed with respect to the *Monell* liability claim, Plaintiffs plead that Venable and Campos were involved in the continuation of unlawful customs that directly caused the alleged constitutional violations. Accordingly, Defendants motion to dismiss is denied as to their supervisory liability claim.

### 2. CLAIMS AGAINST THE OFFICER DEFENDANTS

#### a. Excessive Force, False Arrest, Unreasonable Seizure and False Imprisonment Claims (Counts I, II, V, VI, and XI)[7]

This Court previously dismissed all the Section 1983 and NJCRA claims asserted against the Officer Defendants because except for Smith, Widmaier failed to plead facts setting forth each Defendants' personal involvement in the alleged wrongful conduct. Opinion at 8-9. Although Plaintiffs include additional facts in the FAC to bolster the claims against the Officer Defendants, Defendants still maintain that the FAC is "vague and ambiguous," such that it fails to establish each Defendants' personal involvement in the wrongdoing. Defs. Br. at 18-20. As a result, Defendants contend that Plaintiffs' excessive force, false arrest, unreasonable seizure and false

---

policy in the particular area at issue and his authority to make policy in that area must be final and unreviewable. *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). Whether Campos and Venable are in fact policymakers is arguably unclear from the pleadings. Defendants, however, did not attack the plausibility of such allegations.

[7] Counts V and VI allege that Defendants violated Widmaier's rights under the New Jersey State Constitution. The New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2, "was modeled after 42 U.S.C. § 1983, and creates a private right of action for violations of civil rights secured under the New Jersey Constitution." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). "[C]ourts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted). While Plaintiffs do not specifically name the NJCRA, the Court construes Counts V and VI as being brought under the NJCRA and considers them together with the Section 1983 claims. However, the Court notes that it pointed out this pleading deficiency in its earlier Opinion, and Plaintiff's counsel should have rectified the deficiency in the FAC.

imprisonment claims must be dismissed.

When asserting a Section 1983 claim, a plaintiff must plead facts setting forth each defendant's personal involvement in the alleged violations. *See Iqbal*, 556 U.S. at 676; *see also Rode*, 845 F.2d at 1207-08 (affirming dismissal of First Amendment retaliation claim where plaintiff failed to allege personal direction of or knowledge and acquiescence in retaliatory actions by individual defendants). Although Plaintiffs add additional facts to the FAC, the FAC continues to allege that only Smith was present when the alleged excessive force and arrest occurred. Plaintiffs allege that on July 21, 2015, Smith and Domingues were partners and were working with Frost, Smith's immediate supervisor. FAC ¶¶ 11, 22, 26. Although the FAC includes new allegations that Frost failed to get medical assistance for Widmaier and assisted in a cover-up of the wrongdoing by failing to investigate or document the occurrence (*id.* ¶¶ 75-79), as pled, Frost did not appear until after Smith allegedly backed over Widmaier in the Jeep and Widmaier was lying on the pavement. *Id.* ¶ 49. Frost appears to have had only limited interaction with Widmaier and had left the scene of the incident before the ambulance even arrived. *Id.* ¶¶ 50-55. Thus, the FAC fails to assert facts plausibly suggesting that Frost was involved in the alleged use of force, or that he was involved in Widmaier's arrest, false imprisonment, or any search.

As for Domingues, outside of the allegation that he was Smith's partner and was operating an unmarked police car on July 21 (*id.* ¶ 22), Plaintiffs only allege that "[u]pon information and belief, Domingues was a party to [Widmaier]'s arrest and force utilized therein." *Id.* ¶ 89. This conclusory statement is insufficient to establish that Domingues participated in the alleged wrongful conduct. In fact, neither Domingues or an unmarked police car are mentioned in the FAC again. Finally, the FAC asserts no facts demonstrating that Venable, Rodrigues, or Campos were involved in the events on July 21. Accordingly, Defendants' motion is granted on these

grounds, and the excessive force, false arrest, unreasonable seizure and false imprisonment claims are dismissed as to the Individual Defendants.

### b. Failure to Intervene (Count XII)

In Count XII, Plaintiffs allege that once Frost arrived at the scene, he failed to intervene to prevent Smith's continued constitutional harms. Plaintiffs also allege that Domingues "had the opportunity to intervene immediately following [Widmaier's] arrest." FAC ¶¶ 214-15. Defendants contend that the failure to intervene claim should be dismissed. Defs. Br. at 36-39.

Under some circumstances, an officer's failure to intervene to protect a victim from another officer's use of force may give rise to a Section 1983 claim. "A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Ewing v. Cumberland County*, 152 F. Supp. 3d 269, 309 (D.N.J. 2015). An officer, however, is liable for failing to intervene only if "there was a 'realistic and reasonable opportunity to intervene.'" *Id.* (quoting *Smith v. Mesinger*, 293 F.3d 641, 650 (3d Cir. 2002)). Accordingly, to state a claim a plaintiff must plead facts demonstrating that (1) the defendant had reason to know that excessive force was being used; and (2) there was a realistic opportunity to intervene. *See Norman v. Haddon Township*, No. 14-6034, 2017 WL 2812876, at *5 (D.N.J. June 29, 2017). Here, Frost arrived on the scene *after* the alleged use of force occurred (FAC ¶ 49) and outside the allegation that Domingues was Smith's partner, Plaintiffs fail to plead facts demonstrating that Domingues was involved in the wrongdoing on July 21. As a result, Plaintiffs fail to sufficiently plead that Frost or Domingues could have stopped Smith's alleged excessive force or even knew that it was occurring.

Plaintiffs base their failure to intervene claim on acts that occurred after the excessive force occurred. Thus, they appear to contend that a failure to intervene claim may be premised on

13

constitutional violations more generally, and is not limited to the use of excessive force. Namely, Plaintiffs allege that Frost failed to intervene because he refused to provide Widmaier with medical care once he arrived and that Domingues did not inform supervisors of Smith's purported wrongdoing or ensure that the incident was properly documented. Plfs. Opp. at 30. Plaintiffs, however, do not support their argument with any legal authroity, and the Court is not aware of cases that would support this argument. As discussed, in order to state a failure to intervene claim, a defendant must have had a realistic and reasonable opportunity to intervene to prevent or stop a fellow officer's use of force. *Ewing*, 152 F. Supp. 3d at 309. Consequently, Defendants' motion to dismiss is granted on these grounds and Plaintiffs' failure to intervene claim is dismissed.

### c. Tort Claims

Plaintiffs assert claims for assault and battery against the Officer Defendants (Count IV), and gross negligence and negligence against all Defendants (Counts VII and VIII). With respect to Counts VII and VIII, Plaintiffs allege that Defendants owed Widmaier a duty of exercising minimal care to ensure that there was probable cause to arrest and to use appropriate force during the arrest, and that Defendants breached these duties. FAC ¶¶ 185-93.

### i. The New Jersey Tort Claims Act

Defendants argue they are entitled to absolute immunity for Plaintiffs' tort claims pursuant to the New Jersey Tort Claims Act ("NJTCA") because Plaintiffs fail to plausibly plead that Defendants acted with willful misconduct. Defs. Br. at 34. Generally, the NJTCA provides public employees such as police officers with immunity from tort liability. The NJTCA, however, does not apply if the conduct at issue "constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14. Willful misconduct "is not immutably defined but takes its meaning from the context and purpose of its use." *Fielder v. Stonack*, 141 N.J. 101, 124 (1995).

14

It falls somewhere "between simple negligence and the intentional infliction of harm." *Id.* (quoting *Foldi v. Jeffries*, 461 A.2d 1145 (1983)). While willful misconduct "need not involve the actual intent to cause harm, there must be some knowledge that the act is wrongful." *Id.* (internal citation omitted). Moreover,

> [I]n order to satisfy the requirement of willfulness or wantonness there must be a "positive element of conscious wrongdoing." Our cases indicate that the requirement may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.

*Id.* (quoting *Berg v. Reaction Motors Div., Thiokol Chem. Corp.*, 37 N.J. 396, 414 (1962)).

Here, the FAC pleads enough facts to establish that Frost acted with willful misconduct. As discussed, the FAC alleges that Frost arrived on the scene, took a video recording of Widmaier while Widmaier was laying on the ground and begging for help, and then departed without calling for medical assistance. FAC ¶¶ 49-55. These allegations plausibly plead "a high degree of probability of harm and reckless indifference to the consequences." *Fielder*, 141 N.J. at 124. Accordingly, at the motion to dismiss stage the Court cannot conclude that Frost is immune from Plaintiffs' tort claims.

This is not the case for the other moving Defendants. Plaintiffs argue that considering their new factual allegations with respect to the *Monell* claim, the FAC demonstrates that all of the Defendants acted with willful misconduct. Plfs. Opp. at 24-28. Plaintiffs' tort claims, however, are limited to conduct surrounding Widmaier's arrest and the use of force on July 21. FAC ¶¶ 185-86, 190-91. As pled, none of the other Defendants were involved on July 21 and therefore they could not have acted with willful disregard. Accordingly, except for Frost, the moving Defendants are immune from Plaintiffs' tort claims pursuant to the NJTCA.

15

### ii. Negligence and Gross Negligence (Counts VII and VIII)

Next, Defendants argue that Counts VII and VIII, claims for gross negligence and negligence respectively, should be dismissed because Defendants "did not owe, violate or breach any duty to Plaintiff." Defs. Br. at 29-30. Police officers have "a duty to act reasonably, and, in the context of effectuating an arrest, they have a duty to exercise 'reasonable care to preserve the life, health, and safety of the person in custody.'" *Roccisano v. Township of Franklin*, No. 11-6558, 2013 WL 3654101, at *11 (D.N.J. Jul. 12, 2013) (quoting *Del Tufo v. Township of Old Bridge*, 147 N.J. 90, 101 (1996)); *see also Damiani v. West Deptford Township*, No. 07-2884, 2008 WL 656041, at *3-4 (D.N.J. Mar. 7, 2008) (refusing to dismiss a negligence claim where plaintiff alleged that officers physically pulled her from a car without cause or explanation). As alleged, the FAC sufficiently alleges that Frost breached this duty by videotaping Widmaier and failing to provide him with medical care when Widmaier was in obvious need of such care. As to Frost, therefore, Defendants' motion to dismiss for Counts VII and VIII is denied.[8] These claims are also dismissed as to the remaining Defendants because they are immune under the NJTCA.

### iii. Intentional Infliction of Emotional Distress (Count IX)

Defendants argue that the intentional infliction of emotional distress ("IIED") claim must be dismissed because Plaintiffs fail to identify extreme or outrageous conduct by any Defendant. Defs. Br. at 35-36. Plaintiffs counter that there are sufficient facts to support a claim for intentional infliction of emotional distress because Defendants were personally involved in acts related to the *Monell* claim and as a result of Frost's conduct on July 21. Plfs. Opp. at 28-29.

To establish a claim for intentional infliction of emotional distress, a plaintiff must plead

---

[8] Outside of the argument that Defendants immune, Defendants do not seek to dismiss the assault and battery claim as to any of the remaining Defendants. As a result, the Court will not specifically address this claim and it remains as pled as to Frost.

four elements: (1) defendants acted intentionally or recklessly; (2) defendant's conduct was so outrageous to go beyond all bounds of decency and be utterly intolerable in a civilized community; (3) proximate cause; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it. *Shuman v. Raritan Township*, No. 14-3658, 2016 WL 7013465, at *26 (D.N.J. Nov. 30, 2016) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 532 (D.N.J. 2008)). The Court agrees with Defendants. Although Defendants may have established and maintained a system that resulted in unlawful and unconstitutional police conduct, Plaintiffs fails to establish that Defendants did so intentionally or recklessly. In addition, outside of a conclusory allegation, Plaintiffs fail to plead facts demonstrating that Widmaier suffered emotional distress as a result of the alleged wrongdoing. Defendants' motion to dismiss, therefore, is granted as to this claim.

### 3. Punitive Damages

Finally, Defendants maintain that Plaintiffs' claims for punitive damages must be dismissed. Defs. Br. at 39-40. First, as to the state law tort claims asserted against Frost, "individual officers may be liable for punitive damages in their individual capacity . . . ." *Drake v. Andruczyk*, No. 08-4249, 2011 WL 1402158, at *8 (D.N.J. Apr. 13, 2011) (citing *Ramirez v. United States*, 998 F. Supp. 425, 438 (D.N.J. 1998)). Pursuant to the NJTCA, punitive damages are appropriate if the "acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a). The Court already determined that the FAC sufficiently pleads facts demonstrating willful misconduct as to Frost. Therefore, Defendants' motion to dismiss the punitive damages claims arising under the tort claims is denied. Further, as discussed in the first motion to dismiss Opinion, whether an individual officer can be liable for punitive damages for state constitutional claims does not appear to have been addressed by a court in this

17

district. *See, e.g., May v. Sanna*, No. 09-3253, 2012 WL 1067686, at *14 n.20 (D.N.J. Mar. 29, 2012). Accordingly, the punitive damages claim as to Frost will not be dismissed at this time either.

The other remaining claims are for supervisory liability and the *Monell* claim. To recover punitive damages for a Section 1983 claim against an individual[9], the defendant's conduct must be "motivated by evil motive or intent, or . . . involve[] reckless or callous indifference to the federally protected rights of others." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d. Cir. 1989) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). At this stage, the allegations in Plaintiffs' FAC do not plead reckless or callous indifference such that an award of punitive damages appears to be appropriate for any of the supervisory Defendants. As a result, Defendants' motion to dismiss is granted as to the supervisory Defendants on these grounds.

### 4. Leave to Amend

When granting a motion to dismiss, a court must decide whether to dismiss with or without prejudice, the latter of which provides a plaintiff with opportunity to amend. Dismissal with prejudice is appropriate if an amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004). This is Plaintiffs fifth attempt to assert cognizable claims. As a result, the Court concludes that any further amendment would be futile. *See, e.g., Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013) ("Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings."). The claims and parties that are dismissed

---

[9] As previously explained, Plaintiffs cannot recover punitive damages from Newark. Opinion at 19 n.12.

18

through this opinion, therefore, are dismissed with prejudice.

### D. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (D.E. 73) is **GRANTED in part and DENIED in part**. An appropriate Order accompanies this Opinion.

Dated: April 29, 2017

                                                  John Michael Vazquez, U.S.D.J.